**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5330.10
**CHANGE NOTICE NUMBER:** CN-03
**DATE:** October 9, 1997

1.  <u>PURPOSE AND SCOPE</u>.  To transmit chapter changes to PS 5330.10, Drug Abuse Programs Manual, Inmate.

2.  <u>SUMMARY OF CHANGES</u>.  This Change Notice modifies rules language related to the instant offense and provisional § 3621(e) criteria, and clarifies language regarding prior offenses. Attachments J and K were revised to include language that follows the new Program Statement on Categorization of Offenses.

Attachment N was developed to include a standardized format to obtain instant offense determinations from unit teams. Also, DAP staff must submit relevant documentation to legal staff when there is uncertainty over whether a prior offense would preclude an inmate from receiving a sentence reduction.

Other minor clarifications and corrections to this policy were included.

3.  <u>DIRECTIVE REFERENCED</u>

    PS 5162.04    Categorization of Offenses (10/09/97)

4.  <u>TABLE OF CHANGES</u>

<table>
<tr><td><u>Remove</u></td><td><u>Insert</u></td></tr>
<tr><td>Table of Contents</td><td>Table of Contents</td></tr>
<tr><td>Chapter 5, Pages 5 and 6</td><td>Chapter 5, Pages 5 - 6A</td></tr>
<tr><td>Chapter 6</td><td>Chapter 6</td></tr>
<tr><td>Chapter 7, Pages 3 and 4</td><td>Chapter 7, Pages 3 and 4</td></tr>
<tr><td>Chapter 9, Pages 5 and 6</td><td>Chapter 9, Pages 5 and 6</td></tr>
<tr><td>Chapter 9, Pages 13 and 14</td><td>Chapter 9, Pages 13 - 15</td></tr>
<tr><td>Attachments H, J, K, M</td><td>Attachments H, J, K, M</td></tr>
<tr><td></td><td>Attachments N and O</td></tr>
</table>

5.  <u>APPLICABILITY</u>.  This section summarizes the effect of this Change Notice on inmates who have <u>not</u> volunteered for the residential drug program or who are in a particular stage of drug treatment programming.

   a.  <u>Inmates Not on the DAP Waiting List On This Change Notice</u>
    <u>Effective Date</u>.  All provisions of this Change Notice apply, including new rules (bolded) language;

   b.  <u>Inmates on the DAP Waiting List But Not Participating in</u>
<u>RDAP On This Change Notice Effective Date</u>.  All provisions of this Change Notice apply, including new rules (bolded) language;

   c.  <u>Inmates Participating In or Who Completed the Unit-Based</u>
<u>Portion of the RDAP On This Change Notice Effective Date</u>.  The rules language change that limits the CCRA's power to delay early release applies to this group of inmates.  Other rules changes do not apply to this group of inmates.

   The non-rules text that excludes inmates from receiving early release for threats of violence against a third party (non-Bureau staff member) does not apply to this group of inmates.

6.  <u>ACTION</u>.  File this Change Notice in front of PS 5330.10, Drug Abuse Programs Manual, Inmate.


                    \s\
                    Kathleen M. Hawk
                    Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5330.10
**CHANGE NOTICE NUMBER:** CN-02
**DATE:** April 23, 1997

1.  <u>PURPOSE AND SCOPE</u>.  To transmit chapter changes to PS 5330.10, Drug Abuse Programs Manual, Inmate.

2.  SUMMARY OF CHANGES.  This Change Notice modifies select SENTRY DRG assignments to improve monitoring of an inmate's participation in drug programs.

For streamlining purposes, unit teams are no longer required to complete a hard copy of the Drug Use Review/Referral (DUR/RF) form.  Unit team staff enter information regarding an inmate's requirement to complete drug abuse education directly in SENTRY. Additional clarification on when an inmate is eligible for early release to a detainer is provided.

Also, satellite camps as well as independent camps may create local procedures to refer inmates to drug education/treatment programming, per a recent Executive Staff decision.

Finally, new instructions to handle testing of inmates in drug programs are provided.

3.  TABLE OF CHANGES

| Remove | Insert |
|---|---|
| Table of Contents | Table of Contents |
| Program Statement, Page 3 | Program Statement, Page 3 |
| Chapter 2, Pages 1 - 3 | Chapter 2, Pages 1 - 3 |
| Chapter 6, Pages 3 and 4 | Chapter 6, Pages 3 and 4 |
| Chapter 6, Pages 7 and 8 | Chapter 6, Pages 7 and 8 |
| Chapter 9 | Chapter 9 |
| Attachment A | Attachment A |
| | Attachment M |

4.  <u>ACTION</u>.  File this Change Notice in front of PS 5330.10, Drug Abuse Programs Manual, Inmate.


                              /s/
                    Kathleen M. Hawk
                    Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5330.10
**CHANGE NOTICE NUMBER:** CN-01
**DATE:** May 17, 1996

1. <u>PURPOSE AND SCOPE</u>.  To transmit chapter changes to P.S. 5330.10, Drug Abuse Programs Manual, Inmate.

2. <u>SUMMARY OF CHANGES</u>.  This Change Notice clarifies the definition of residential drug abuse programs in the Federal Bureau of Prisons and modifies the eligibility criteria for early release when an inmate completes a residential drug abuse treatment program.  Specifically, inmates are required to complete the community-transition component of the residential drug abuse treatment program to be considered for a reduction in their sentence under 18 U.S.C. § 3621(e).

Attachments B-3, C, H and I have been modified, and Attachments J and K have been added to ensure that inmates considered for early release meet the statutory and regulatory criteria before transfer to a CCC or detainer.

3. <u>TABLE OF CHANGES</u>

|  <u>Remove</u>  |  <u>Insert</u>  |
|---|---|
| Table of Contents | Table of Contents |
| Chapters 5 and 6 | Chapters 5 and 6 (CN-01) |
| Attachments B-3, C, H and I | Attachments B-3, C, H, I, J, K, and L (CN-01) |

4. <u>ACTION</u>.  File this Change Notice in front of P.S. 5330.10, Drug Abuse Programs Manual, Inmate.

\s\
Kathleen M. Hawk
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5330.10
**DATE:** May 25, 1995
**SUBJECT:** Drug Abuse Programs Manual, Inmate

**EFFECTIVE DATE:** June 26, 1995

1. **[<u>PURPOSE AND SCOPE</u> § 550.50. The Bureau of Prisons provides, subject to the availability of appropriated funds, drug abuse treatment programs to inmates.]** The purpose of this Manual is to establish operational policy and procedural guidelines for the delivery of drug abuse treatment services and to describe the general philosophy of treatment guiding all Bureau drug abuse programs. Further, this Manual establishes implementation guidelines for the Violent Crime Control and Law Enforcement Act of 1994, specifically, amendments to 18 U.S.C. § 3621, Subtitle T, Substance Abuse Treatment in Federal Prisons.

2. <u>PROGRAM OBJECTIVES</u>. The expected results of this program are:

   a. Inmates who need and want drug abuse treatment will be able to participate in one or more programs designed to assist them.

   b. Inmates who meet certain criteria will be required to participate in drug abuse treatment programs.

   c. Eligible inmates who successfully complete the Bureau's residential drug abuse treatment program may earn up to a one year reduction from their statutory release date.

   d. Inmates who violate program rules and expectations may be removed from a program and lose their eligibility for early release.

   e. Inmates who participate in residential drug abuse programs will continue their drug abuse treatment when transferred to a Community Corrections Center.

   f. Progress records on drug abuse treatment participants will be properly maintained.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

     P.S. 5330.09   Drug Abuse Programs, Inmate (10/31/94)

   b.  <u>Directives Referenced</u>

| | |
|---|---|
| P.S. 1070.03 | Research (03/23/94) |
| P.S. 1210.14 | Management Control and Program Review (10/06/94) |
| P.S. 1330.11 | Administrative Remedy Procedure for Inmates (10/29/93) |
| P.S. 1351.02 | Privacy Act of 1974 (09/25/75) |
| P.S. 5070.08 | Responses to Judicial Recommendations and U.S. Attorney Reports (11/15/93) |
| P.S. 5100.05 | Security Designation and Custody Classification Manual (06/16/94) |
| P.S. 5290.07 | Intake Screening (07/20/92) |
| P.S. 5290.08 | Admission and Orientation Program (04/20/93) |
| P.S. 5310.12 | Psychology Services Manual (08/30/93) |
| P.S. 5321.05 | Unit Management Manual (10/19/93) |
| P.S. 5325.04 | Pre-Release Program (07/13/94) |
| P.S. 5380.02 | Financial Responsibility Program, Inmate (05/15/91) |
| P.S. 5800.09 | Central File, Privacy Folder, and Parole Mini-Files (07/21/93) |
| P.S. 6060.05 | Urine Surveillance to Detect and Deter Illegal Drug Use (11/18/91) |
| P.S. 7300.08 | Community Corrections Manual (04/01/91) |
| P.S. 7310.02 | Community Corrections Center (CCC) Utilization and Transfer Procedure (10/19/93) |
| P.S. 7430.01 | Community Transitional Drug Treatment Services, Inmate (01/20/95) |

   c.  Rules cited in this Program Statement are contained in 28 CFR Parts 542, 545, 550.

4.  <u>STANDARDS REFERENCED</u>

   a.  American Correctional Association Foundation/Core Standards for Adult Correctional Institutions:  C2-5154, C2-4248

   b.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4371, 3-4388

   c.  American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities:  C2-5258

   d.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-4E-40, 4E-41, 4F-05

5.  <u>RESPONSIBILITIES</u>.  The Warden shall implement in all Bureau
of Prisons institutions the requirements contained in this
Manual.  Implementation of this Manual is intended to create a
uniform and effective drug abuse program system throughout the
Bureau of Prisons.

\*    With the exception of inmates who volunteer for drug education or
non-residential drug counseling (see Chapters 3 and 4), the
requirements in this Manual do not apply to pre-trial inmates.  \*


                                    /s/
                                    Kathleen M. Hawk
                                    Director

PS 5330.10
CN-02 April 23, 1997
Page i

TABLE OF CONTENTS

**CHAPTER 1**   Administration and Management

1.1   The Bureau's Commitment  . . . . . . . . . . . . . . . 1-1
1.2   Program Philosophy and Model of Service Delivery . . . 1-1
1.3   Organizational Structure of Central and
         Regional Office . . . . . . . . . . . . . . . . . . 1-2
1.4   Institutional Organization/Staff
         Roles & Responsibilities . . . . . . . . . . . . . 1-3
1.5   Funding for Drug Abuse Treatment Programs  . . . . . . 1-5

**CHAPTER 2**   Orientation, Screening and Referral

2.1   Admission and Orientation Program  . . . . . . . . . . 2-1
2.2   Screening and Referral. . . . . . . . . . . . . . . . 2-1
2.3   Referral and Redesignation . . . . . . . . . . . . . . 2-2

**CHAPTER 3**   Drug Abuse Education Course

3.1   Overview . . . . . . . . . . . . . . . . . . . . . . . 3-1
3.2   Requirements for Drug Abuse Education Course . . . . . 3-1
         Mandatory Participation . . . . . . . . . . . . . . 3-1
         Voluntary Participation . . . . . . . . . . . . . . 3-1
         Sanctions . . . . . . . . . . . . . . . . . . . . . 3-1
         Exemptions  . . . . . . . . . . . . . . . . . . . . 3-2
         Written Consent . . . . . . . . . . . . . . . . . . 3-2
         Completion  . . . . . . . . . . . . . . . . . . . . 3-2
3.3   Structure of the Course  . . . . . . . . . . . . . . . 3-2

**CHAPTER 4**   Non-Residential Drug Abuse Treatment Program

4.1   Non-Residential Drug Abuse Treatment Program . . . . . 4-1
4.2   Program Requirements and Procedures
         Eligibility . . . . . . . . . . . . . . . . . . . . 4-2
         Application/Referral/Placement  . . . . . . . . . . 4-2
         Withdrawal/Expulsion  . . . . . . . . . . . . . . . 4-2
         Treatment Plans and Progress Reviews  . . . . . . . 4-2
         Institution Transitional Services . . . . . . . . . 4-2
4.3   Self-Help Programs . . . . . . . . . . . . . . . . . . 4-3

**CHAPTER 5**   Residential Drug Abuse Treatment Program

5.1   Institution Residential Drug Abuse
         Treatment Program . . . . . . . . . . . . . . . . . 5-1
5.2   Program Structure . . . . . . . . . . . . . . . . . . 5-1
5.3   Program Elements . . . . . . . . . . . . . . . . . . . 5-2
5.4   Program Procedures . . . . . . . . . . . . . . . . . . 5-3
         Eligibility . . . . . . . . . . . . . . . . . . . . 5-3
*        Application/Referral/Placement  . . . . . . .  . 5-4*

PS 5330.10
CN-03 October 10, 1997
Page ii

        Completion . . . . . . . . . . . . . . . . 5-5
        Withdrawal/Expulsion . . . . . . . . . . . . 5-6
        Treatment Documentation . . . . . . . . . . 5-7
        Certificates . . . . . . . . . . . . . . . 5-8
        Urine Surveillance . . . . . . . . . . . . . 5-8
5.5   Incentives for Residential Drug Abuse Treatment
        Program Participation . . . . . . . . . . . 5-9
5.6   Residential Drug Abuse Treatment For Mariel Cubans . 5-11

**CHAPTER 6**   Early Release Qualifications

6.1   Consideration for Early Release . . . . . . . . . 6-1
6.2   Application . . . . . . . . . . . . . . . . . 6-6
6.3   Attachment J- Provisional 3621(e) Eligibility . . . . 6-7
6.4   Length of Reduction . . . . . . . . . . . . . 6-9
6.5   Loss of Early Release Eligibility . . . . . . . . 6-9
* 6.6   Final Review of Eligibility . . . . . . . . . . 6-11
6.7   Monitoring Early Release in Community Based Programs 6-12*

**CHAPTER 7**   Transitional Drug Treatment Services

7.1   Transitional Drug Treatment Services . . . . . . . 7-1
7.2   Transition to General Population . . . . . . . . 7-1
7.3   Transition to a Community Corrections Center . . . . 7-2
7.4   Transition to Supervised Release/Parole . . . . . . 7-3

**CHAPTER 8**   Inmate Appeals

8.1   Inmate Appeals . . . . . . . . . . . . . . . 8-1
8.2   Emergency Inmate Appeals . . . . . . . . . . . 8-1

* **CHAPTER 9**   Program Documentation

9.1   Overview . . . . . . . . . . . . . . . . . 9-1
9.2   Classification of DRG Assignments . . . . . . . . 9-1
9.3   SENTRY DRG Assignments . . . . . . . . . . . . 9-3
9.4   Initial Screening . . . . . . . . . . . . . . 9-3
9.5   Assignments for Non-residential Drug Abuse Counseling 9-6
9.6   Assignments for Review of Early Release Eligibility . 9-6
9.7   Assignments for Residential Drug Treatment . . . . . 9-7
9.8   Assignments for Non-Residential Transitional Services 9-8
9.9   Assignments for ICC Treatment . . . . . . . . . 9-9
9.10  Assignments for Community Transitional Services . . 9-11
9.11  Comprehensive Removal of SENTRY Assignments . . . . 9-12
9.12  Other Documentation Requirements . . . . . . . . 9-12*

PS 5330.10
CN-03 October 09, 1997
Page iii

**Attachments**

Drug Use Review/Referral Form
(BP-S551.053) . . . . . . . . . . . . . . . Attachment A

Agreement to Participate in BOP Drug Education Course
(BP-S550.053) . . . . . . . . . . . . . . Attachment B-1

Agreement to Participate in BOP Non-Residential Drug Abuse
Treatment Services . . . . . . . . . . Attachment B-2

Agreement to Participate in BOP Residential Drug Abuse
Treatment Programming . . . . . . . . . Attachment B-3

Agreement to Participate in BOP Transition
Programming . . . . . . . . . . . . . . Attachment B-4

Change in Drug Abuse Program Status Memorandum . Attachment C

Treatment Summary and Referral Form
(BP-S549.053) . . . . . . . . . . . . . . Attachment D

Request for Aftercare Stipulation . . . . . . Attachment E

Waiver of Hearing to Modify Court Order
(BP-S544.053) . . . . . . . . . . . . . . Attachment F

Authorization to Release Confidential Information
(BP-S202.053) . . . . . . . . . . . . . . Attachment G

* Notification of Provisional Determination for 18 U.S.C. §
3621(E) Sentence Reduction . . Attachment H*

Letter for the United States Parole
Commission . . . . . . . . . . . . . . Attachment I

* Notice of Residential Drug Abuse Program
Qualification and Provisional
3621(e) Eligibility . . . . . . . . . . Attachment J

Final Review of Inmate's Provisional
3621(e) Early Release . . . . . . . . Attachment K*

Retroactivity of Early Release . . . . . . . Attachment L

* Listing of DRG Assignments . . . . . . . . . Attachment M

Notification of Instant Offense Determination . Attachment N

Request to Delay Early Release Date . . . . . Attachment O*

## CHAPTER 1

<u>ADMINISTRATION AND MANAGEMENT</u>

1.1  <u>The Bureau's Commitment</u>.  The Bureau of Prisons is committed to providing quality, empirically based drug abuse treatment services to all inmates with a documented need and/or interest in such programs.  Upon commitment, all inmates are screened for substance abuse problems and are informed of drug abuse treatment services available to them while incarcerated and upon release.

1.2  <u>Program Philosophy and Model of Service Delivery</u>.  The philosophy underlying all Bureau of Prisons' drug abuse programs is that individuals must assume personal responsibility for their behavior.  Despite the influence of environmental conditions and circumstances, the primary target for change is the individual's conscious decision to engage in drug-taking and criminal behavior. The principal goal of treatment is to equip the individual with the cognitive, emotional and behavioral skills necessary to choose and maintain a drug-free and crime-free lifestyle.

A biopsychosocial model of treatment guides interventions in all Bureau drug abuse programs.  This holistic approach emphasizes comprehensive lifestyle change as the key to treatment success. Issues such as physical well-being, family relationships and criminality are targeted for change in addition to traditional treatment goals of relapse prevention and abstinence.  The acquisition of positive life skills is viewed as the means through which participants can change the negative thinking and behavior patterns which led to their drug use and criminality in the past. Through individual and/or group counseling, participants can gain awareness of the negative consequences of their previous thinking/behavior patterns and can learn and develop alternative skills.

The Bureau employs a five-component treatment strategy which includes:

- ◆  Orientation, Screening and Referral;

- ◆  Drug Abuse Education;

- ◆  Non-residential Drug Abuse Treatment Services;

- ◆  Residential Drug Abuse Treatment; and

- ◆  Transitional Services.

Descriptions of the various program components and relevant procedures are detailed in subsequent chapters.

1.3  <u>Organizational Structure of Central and Regional Office</u>

   a.  <u>Central Office Drug Abuse Treatment Program Coordinator</u>.
Psychology Services is responsible for providing drug abuse
treatment services in the Bureau of Prisons.  Thus, the National
Drug Abuse Treatment Program Coordinator reports directly to the
Chief, Psychology Services, Central Office.  The National
Coordinator is responsible for the overall administration,
development, management, and monitoring of drug abuse programs for
the Bureau of Prisons.

   b.  <u>Central Office Transitional Services Coordinator</u>.  The
Transitional Services Coordinator for Drug Programs is located in
Central Office, within the Community Corrections and Detention
Division.  This position is responsible for the overall design,
implementation, quality control, and programming related to the
transition of the appropriate inmate to the community.  The
position entails coordinating efforts among Central Office Drug
Program staff, institutional personnel, community corrections
personnel, the U.S. Parole Commission, the Administrative Office
of the U.S. Courts, as well as individual Probation Districts.
This position shall ensure the establishment and effective
operation of a comprehensive transition/aftercare program.

   c.  <u>Regional  Coordinators</u>.  Regional  Coordinators, under the
supervision of the Regional Psychology Services Administrators,
are responsible for oversight and coordination of institutional
drug abuse programming in their respective regions.  The Regional
Coordinator will be located within an institution approved by the
Regional Director, preferably an institution with an operating
residential drug abuse treatment program.  Except in emergency
situations or unusual circumstances, the Regional  Coordinator is
not to be used to provide routine psychological services at the
institution where the position is located.  The Regional
Coordinator:

     (1)  Must be knowledgeable concerning events and operations
in all areas at each institution in the region.  He/she should be
able to accurately describe each program to the Regional Director,
Deputy Regional Director, and/or Regional Psychology Administrator
at any time.  He/she should be able to assess the strengths and
weaknesses of the program and its staff prior to a program review.

     (2)  Shall build a strong partnership among Central Office,
region, and institution staff.  He/she shall assist the  staff to
maintain a monitoring process as a basis for sound program review.
The Regional Coordinator shall play a vital role in strategic
planning in drug abuse treatment programs in the region, by
assisting with each program to create plans and the means to
implement and monitor the progress of these plans.

(3)  Shall provide technical assistance through regular staff assistance visits.  He/she shall identify the causes of problems within the area and is to recommend solutions to correct those problems and advise the Regional Psychology Services Administrator of identified concerns.  The Regional Coordinator must assess whether institution resources (i.e., staff, budget) are sufficient for all drug abuse treatment programs.  When necessary, he/she shall recommend additional resources to ensure the successful operations of the drug abuse treatment programs in the institution.

(4)  Shall identify high risk areas in drug abuse treatment programs and compile the information for management assessments and participate in the development of program review guidelines. The Regional Coordinator shall share responsibility for the program review ratings process by identifying vital functions and the management indicators that monitor those functions for their discipline.

d.  <u>Regional Transitional Services Managers</u>.  Regional Transitional Services Managers (TSM) are responsible for the continuation of treatment for inmates transferring from institutions to a Community Corrections Center (CCC) and/or Home Confinement.  The Regional TSM shall be located in the Community Corrections Manager's (CCM) office in each region.  The TSMs shall operate with the Community Corrections Regional Administrator's support and supervision and are responsible for the oversight and coordination of community-based drug treatment contracting. He/she shall also be responsible for liaison activities among the institutional drug abuse programs, contract treatment providers, and the U.S. Probation Service.

## 1.4  [**Institutional Organization/Staff Roles and Responsibilities § 550.51**

a.  **Drug Abuse Treatment Coordinator**.  **The Warden shall designate a Drug Abuse Treatment Coordinator for his/her institution.**]  The Chief, Psychology Services is responsible for drug abuse treatment programs within the institution.  Thus, the Drug Abuse Treatment Coordinator shall report directly to the Chief, Psychology Services.  The Drug Abuse Treatment Coordinator should be a psychologist with experience and training in drug abuse treatment program models, approaches, and operations.  It is important that the best qualified person, in terms of training and experience, be selected for this position.  He/she shall be responsible for ensuring compliance with the standards in this Manual, the clinical and administrative supervision of drug abuse treatment staff, and the clinical quality of all drug abuse treatment programs in the institution.  Except in cases where the Chief of Psychology Services is the only Psychology staff person, the Chief of Psychology should not be designated as the Drug Abuse Treatment Coordinator.

The Drug Abuse Treatment Coordinator shall be responsible for the oversight of A & O presentations on drug abuse programs, drug abuse education, non-residential drug abuse treatment, information transfer related to community-transition drug treatment programming, the administrative and clinical supervision of the drug abuse treatment specialist, and any contract staff hired to provide drug abuse programming.

In institutions with residential drug abuse treatment units, the role of the Drug Abuse Treatment Coordinator shall be greatly expanded given the number of treatment staff who require administrative and clinical supervision and the heightened level of programming.  In addition to the basic responsibilities noted above, he/she is to be responsible for the implementation, maintenance, and continued development of the residential drug abuse treatment program.

On all residential drug abuse treatment units, the Unit Manager shall be responsible for supervising Case Managers, Correctional Counselors, and Unit Secretaries.  The need for communication and coordination between drug treatment and unit management staff is essential in the residential drug abuse treatment units.  Unit management and drug treatment staff functions, however, are distinct.  Drug abuse treatment staff should be used exclusively for treatment provision and should not be used to perform routine unit or case management functions.

**[b.  <u>Drug Abuse Treatment Specialist</u>.  All institutions shall employ a drug abuse treatment specialist.  The drug abuse treatment specialist is responsible for providing drug abuse education and non-residential drug abuse treatment services to the inmate population, under the supervision of the drug abuse treatment coordinator.  In institutions with residential drug abuse treatment programs, additional drug abuse treatment specialist staff are employed to provide treatment services on the residential drug abuse treatment unit.]**

The drug abuse treatment specialist shall be a member of the Psychology Services department.  Drug abuse treatment specialists should have a background that includes experience in drug treatment counseling activities, preferably with an offender population.  The Selective Factor for drug treatment specialists must be used when selecting staff for this position.  A Master's or Bachelor's Degree is preferred within a psychology/human behavioral sciences discipline.  A degreed individual without experience in drug abuse treatment is not a suitable candidate for the position of a drug abuse treatment specialist.  Again, it is essential that the best qualified staff are selected to fill drug treatment positions and that such staff are utilized exclusively for the provision of drug abuse treatment services, specifically providing the drug abuse education and residential drug abuse treatment curricula.  Except in emergency situations, drug

treatment staff are not be used to perform duties other than
provide drug abuse treatment services.

   c. <u>Continuing Education</u>.  As technology and knowledge increase, innovative techniques for treating the drug-dependent offender population are being developed.  Bureau of Prisons' drug abuse program coordinators and specialists are expected, through ongoing professional reading and annual continuing education, to become aware of the latest approaches to therapeutic interventions and becomes skilled in the use of those techniques which would most benefit the inmate population.

   The Bureau of Prisons through Drug Abuse Programs, in its Central Office Psychology Branch, when resources permit, sponsors a continuing education program to assist drug abuse treatment specialists to obtain or maintain their professional certification.

   The Central Office Drug Abuse Treatment Specialist is designated as the coordinator of the Drug Abuse Programs Continuing Education program.

1.5  <u>Funding for Drug Abuse Treatment Programs</u>.  The Chief of Psychology Services is responsible for managing Cost Center F317.  F317 funds cannot be used to offset deficits in other cost centers.  Operational money is to be expended for treatment-related services and resources only.  Expending funds for contract services is permitted only for services which institution staff cannot provide and which support Drug Abuse Treatment Programs.  Consultants may be used for training institution staff when Bureau training resources are not available.

# CHAPTER 2

## ORIENTATION, SCREENING AND REFERRAL

**2.1  [Admission and Orientation Program § 550.52.  Drug abuse treatment coordinators at all institutions shall ensure that inmates are informed during the Admission and Orientation program about local and Bureau-wide drug abuse treatment programming and treatment opportunities.]**  This presentation should be made by a drug abuse treatment specialist, Drug Abuse Treatment Coordinator, or psychologist.  A videotape entitled "Choice and Change", which describes BOP drug abuse programs, has been distributed to all institutions and is recommended for use in this presentation.

**2.2  [Screening and Referral § 550.53.  A psychologist or drug abuse treatment specialist shall interview all new institution admissions for drug abuse problems.  A record review will be performed by a case manager in the normal course of his/her duties.  Based on these reviews and interviews, drug abuse treatment staff shall make an appropriate drug education/treatment referral.]**  The Drug Abuse Treatment Coordinator shall be responsible for ensuring that the screening procedures that follow are in place at all institutions.  The screening of each inmate shall have two operational components:

\*     a.  Unit staff shall determine whether an inmate meets any of the criteria for the required Drug Abuse Education course and enter the appropriate DRG I assignment within 30 days of the inmate's arrival at the institution to which he or she was designated initially.  Unit staff shall also conduct a new review for inmates returned as failures in a community-based program, and enter the appropriate DRG I assignment based on this updated review.  In this situation, inmates who receive a new DRG I RQ assignment upon return to an institution must repeat the drug abuse education course.

Unit team staff completion of a hard copy of the Drug Use Review/Referral Form (DURRF) is no longer required.  Unit team staff are now required to review the inmate central file documentation, apply the criteria described in Attachment A, and enter one of the four DRG I assignments directly into SENTRY.  Once entered, a DRG I assignment must always be a current SENTRY DRG assignment while the inmate is in Bureau custody (see section 9.4 for further clarification).

At all satellite and independent camps, the Warden may establish alternate local procedures to refer appropriate inmates for drug education/treatment.                                              \*

b.  Ordinarily, when a screening is required, the interviewing psychologist shall screen each inmate for substance abuse problems.

The Drug Abuse Treatment Coordinator shall ensure that information from both the Central File review and the Psychology Screening operations are used to determine programming needs and recommendations for each inmate.  If the recommended program is available locally, inmates are to be referred accordingly and will be asked to sign an Agreement to Participate (BP-S550.053) in that particular program.

2.3  <u>Referral and Redesignation</u>.  In order to best manage the growing number of inmates requesting residential drug abuse treatment, the first priority shall be to consider the transfer of inmates within the same region whenever possible.  If the region where the sending institution is located does not have a drug program at an institution with the appropriate security level to accommodate an inmate's request for treatment, a management variable should be considered.  Appropriate waivers shall be obtained for this option.  Only after same-region redesignations have been examined and found to be inadequate, e.g. such as separatee issues, should a transfer between regions be considered.

The following procedures shall be used to refer and redesignate inmates to residential drug abuse treatment programs.

2.3.1  <u>Eligibility Determination</u>.  Once an inmate requests residential drug abuse treatment programming, the drug abuse treatment staff shall determine the inmate's eligibility for the program.  Drug abuse treatment staff shall:

(1)  complete the Residential Eligibility Interview;

(2)  substantiate the inmate's self-disclosed drug history with documentation in the central file;

(3)  coordinate with unit staff to determine if the inmate's instant offense qualifies him/her for early release consideration;

(4)  determine the inmate's eligibility for early release based on previous criminal convictions; and if deemed eligible; and

(5)  ensure the inmate signs the appropriate treatment agreement.

2.3.2  <u>SENTRY Assignment</u>.  Having determined the inmate's eligibility for a residential drug abuse treatment program, the drug abuse treatment staff shall enter the appropriate SENTRY `DRG' assignment, documenting that the inmate is now in "waiting" status for a residential drug abuse treatment program and whether the inmate is eligible or ineligible for early release consideration (see Chapter 9 for specific SENTRY codes).

2.3.3  <u>Redesignation Priorities</u>.  When the inmate's Projected
Release Date (PRD) is within 36 months, the unit team, at the drug
abuse treatment staff's request, shall initiate a request for
redesignation.  The institution's Coordinator shall monitor these
inmates through the local `DAP WAIT' list, (by PRD).

2.3.4  <u>Security Level</u>.  The Regional Designator shall attempt to
redesignate within his/her region according to security level.  If
the region has more than one institution at the same security
level with a residential drug abuse program, he/she shall try to
rotate redesignations to distribute inmates evenly across
programs.  In some circumstances, the Regional Designator may
transfer an inmate to an institution that does not match his/her
security level by applying a management variable.

2.3.5  <u>Inter-Regional Transfers</u>.  When an inmate is transferred
outside the region, the Regional Designator may contact his/her
Regional Coordinator.  When contacted, the Regional Coordinator
shall assist the designator to determine where treatment slots are
available at same-security institutions in other regions.  The
"sending" Regional Coordinator may contact the "receiving"
Regional Coordinator who shall assist to determine where an
individual placement should be made.

2.3.6  <u>Monitoring</u>.  All Regional and Institution Coordinators
shall monitor incoming transfers via SENTRY:

     e.g. SENTRY Code - DST EQ XXX + DRG EQ DAP WAIT,
                     XXX = institution.

2.3.7  <u>Program Failure Redesignation</u>.  If an inmate is
transferred to an institution for residential treatment and then
fails to enter that program, is expelled from that program, or
withdraws from that program, he/she shall be redesignated for
return to the institution from which he/she was received.

# CHAPTER 3

## DRUG ABUSE EDUCATION COURSE

3.1  <u>Overview</u>.  The drug abuse education course is provided at all institutions through the Psychology Services department.  The purpose of the drug abuse education course is to inform inmates of the consequences of drug/alcohol abuse and addiction and to motivate inmates in need to apply for further drug abuse treatment while incarcerated and upon release.

3.2  **[<u>Requirements for Drug Abuse Education Course</u> § 550.54**

  **(a)**  <u>Participation</u>.  **(1)  Mandatory participation**.  **An inmate is required to participate in the drug abuse education course if he/she has been sentenced or returned to custody as a violator after September 30, 1991 and it is determined by unit and/or drug abuse treatment staff through a combination of interview and file review that:**

> **(i)  There is evidence in the Presentence Investigation that alcohol or other drug use contributed to the commission of the instant offense;**

> **(ii)  Alcohol or other drug use was a reason for violation either of supervised release, including parole, or BOP community status (CCC placement) for which the inmate is now incarcerated; or**

> **(iii)  The inmate was recommended for drug programming during incarceration by the sentencing judge.**

  **(2)  Voluntary participation**.  **Inmates who are not required by paragraph (a)(1) of this section to participate in the drug abuse education course may request to participate voluntarily in the drug abuse education course when participant space is available.  Volunteers must have the approval of the drug abuse treatment coordinator.  Priority consideration shall be given to those inmates whose participation has been recommended by unit or treatment staff.**

  **(b)**  <u>Sanctions</u>.  **An inmate who is required by paragraph (a)(1) of this section to participate in the drug abuse education course and who refuses participation, withdraws, is expelled, or otherwise fails to meet attendance and examination requirements shall be held at the lowest pay grade (Grade 4) within the institution and shall be ineligible for community programs.]**  The Drug Abuse Treatment Coordinator shall prepare a "non-promotable" list monthly to provide appropriate department heads, detail supervisors, and payroll coordinators a list of inmates restricted to pay grade 4.  A copy of the Change in Drug Abuse Treatment Program Status Memorandum (Attachment C) shall be forwarded to

appropriate personnel when there is a change in the inmate's drug
abuse education participation status.

[Inmates may be permitted to receive work promotions during their participation or while on a "waiting list" for the drug abuse education course.  The Warden may make exceptions to the provisions of this paragraph for good cause with reasons for such exceptions documented in writing.

  (c)  <u>Exemptions</u>.  An inmate may be exempted from the required drug abuse education course due to cognitive impairment or other learning disabilities only after evaluation and recommendation by a psychologist.  An inmate may also be exempted from the drug abuse education course if that inmate does not have enough time remaining to serve to complete the drug abuse education course, or if that inmate volunteers for, enters and completes a residential drug abuse treatment program, or if he/she completes a structured drug abuse treatment program at one of the Bureau of Prisons' Intensive Confinement Centers (ICC).]

  [(d)  <u>Written consent</u>.  All inmates who enter the drug abuse education course (whether as mandatory or as voluntary participants) are required to sign an agreement to participate prior to admission to the course.]  (Agreement to Participate in the Bureau Of Prisons, BP-S550.053 (Attachment B)).

  [(e)  <u>Completion</u>.  Completion of the drug abuse education course requires attendance and participation during course sessions and a passing grade of 70 percent on an examination given at the end of the course.  Inmates required to participate in this course ordinarily are provided at least three chances to pass the final examination before privileges are lost or sanctions (see paragraph (b) of this section) are invoked.  A certificate of achievement will be awarded to all who successfully complete the program.  A copy of this certificate will be forwarded to the unit team for placement in the inmate's central file.]

3.3  <u>Structure of the Course</u>  Staff shall employ the "Choice and Change" curriculum, also known as the Drug Abuse Education Manual, to conduct the course.  Ordinarily, the institution's drug abuse treatment specialist, under the Drug Abuse Treatment Coordinator's direct supervision, shall be responsible for conducting the course.

Since one objective of the drug abuse education course is to motivate inmates in need to participate in further treatment, those with the least amount of time remaining should receive priority placement, allowing sufficient time for them to volunteer for and enter residential drug treatment.  Whenever possible, the Drug Abuse Education group size should not exceed 24 individuals.

## CHAPTER 4

<u>NON-RESIDENTIAL DRUG ABUSE TREATMENT SERVICES</u>

**4.1  [<u>Non-residential drug abuse treatment program</u> § 550.55.  Non-residential drug abuse treatment is provided at all institutions and ordinarily consists of individual and/or group counseling and self-help programming provided through the institution's Psychology Services department.]**  Non-residential drug abuse treatment services shall be available to inmates with substance abuse problems in all institutions.

Non-residential drug abuse treatment services assists inmates in two ways.  First, non-residential drug abuse treatment offers substance abuse treatment services to inmates with alcohol or drug problems who are not eligible or not interested in participating in residential drug abuse treatment program.

Second non-residential drug abuse treatment is the forum for institutional transitional services.  This treatment regimen is provided to inmates who have returned to general population after completing a residential drug abuse treatment program (see Chapters 5 and 7).

**4.2  <u>Program Requirements and Procedures</u>**.  The Drug Abuse Treatment Coordinator shall be responsible for implementing and administering non-residential drug abuse treatment services at each institution.  Non-residential drug abuse services shall include a minimum of one hour of individual or group contacts each month as indicated by a treatment plan.  Group program activities may be conducted in a variety of formats.  For example, periodic seminars or workshops, audio/video learning, or marathon sessions may be used as the format for non-residential drug abuse treatment.

The clinical focus of non-residential drug abuse treatment must be alcohol and drug related.  Topics may be taken from the Drug Abuse Treatment Handbook.  Common topics include:

♦  interpersonal skill building;

♦  errors in thinking;

♦  post release survival; and

♦  anger management.

While these topics may also be appropriate for inmates in general population, the focus must be on the topics' relationship to alcohol and drug abuse and methods used to overcome drug-using patterns when offered as a part of the non-residential drug abuse program.

Ordinarily, Psychology Services staff shall conduct non-residential drug abuse services, most often by the institution's drug abuse treatment specialist.  Psychology contract personnel, unit staff, and/or volunteers may also provide these services, but only under the direct supervision of the drug abuse program coordinator or other psychologists.  The  Coordinator shall enter the appropriate non-residential program assignment in SENTRY.

   **[(a)  Eligibility.  An inmate must meet all of the following criteria to be eligible for the non-residential drug abuse treatment program.**

      **(1)  The inmate must have a verifiable documented drug abuse problem.**

      **(2)  The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.**

      **(3)  The inmate must sign an agreement acknowledging his/her program responsibility.]** (BP-S550.053 (Attachment B)).

   **(b)  Application/Referral/Placement.  Participation in the non-residential drug abuse treatment program is voluntary.  An inmate may be referred for treatment by unit and/or drug treatment staff or may apply for these programs by submitting a request to a staff member (ordinarily, a member of the inmate's unit team or the drug abuse treatment coordinator).  The decision on placement is made by the drug abuse treatment coordinator.**

   **(c)  Withdrawal/expulsion.  An inmate may withdraw voluntarily from the program.  The drug abuse treatment coordinator may remove an inmate from the program based upon disruptive or negative behavior.]**

   4.2.1  Treatment Plans and Progress Reviews.  Individual treatment plans shall be maintained on all inmates participating in the non-residential treatment services.  All individual contacts are to be documented after every session. Treatment plans and notes must be reviewed every 90 days.  Termination reports shall be completed at the close of each inmate's treatment participation.

   4.2.2  Institution Transitional Services.  The Drug Abuse Treatment Coordinator is responsible for ensuring that all residential program graduates are offered treatment within the institution to maintain treatment gains upon release to the community.  See Chapter 7, Transitional Services, for specific procedures.

4.3  <u>Self-help Programs</u>.  Self-help programs such as Alcoholics Anonymous (AA), Narcotics Anonymous (NA), and Rational Recovery (RR) may be offered as part of an institution's drug abuse programming efforts.  They are most often associated with non-residential treatment.  While such programs are often powerful and important interventions in an individual's recovery from drug abuse and dependence, they do not constitute non-residential drug abuse treatment by themselves.  Thus, participation in self-help groups alone does not require a signed agreement.  However, if participation in a self-help group is recommended in addition to the inmate's residential or non-residential treatment regimen, then treatment staff shall incorporate this in the inmate's treatment plan.

## CHAPTER 5

RESIDENTIAL DRUG ABUSE TREATMENT PROGRAMS

**5.1 [Institution residential drug abuse treatment program §550.56.  Residential drug abuse treatment is available at selected Bureau of Prisons institutions.  It is a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit set apart from the general prison population, lasting a minimum of 500 hours over a six to twelve-month period. Inmates enrolled in a residential drug abuse treatment program shall be required to complete subsequent transitional services programming in a community-based program and/or in a Bureau institution.]**

*    All participants must adhere to program rules, behave in a manner consistent with the program philosophy, and comply with Bureau of Prisons rules and regulations.                                           *

5.2  Program Structure

*    5.2.1  Program Components.  The entire residential drug abuse treatment program in the Bureau consists of three components. Successful completion of the residential drug abuse program occurs when the inmate has successfully completed each of these three components:

    ■ the unit-based residential program lasting between six-to-12 months (minimum 500 hours);

    ■ the institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program (however, if an inmate is scheduled for a transfer to a community-based program before he or she can begin or complete the institution transitional services component, this component is not required); and

    ■ the community transitional services, lasting up to six months when the inmate is transferred to a community corrections center or to home confinement.                                         *

    5.2.2  Duration and Staffing.  Ordinarily, inmates can complete
*    a residential treatment program in six-to-12 months through half-time participation in programming and half-time assignment to an institution work detail.  All residential program participants must be housed in a separate drug treatment unit for a minimum of six months (defined as 180 days) and receive a minimum of 500 hours of drug abuse treatment.  When limited time remaining on      *
a sentence precludes participation in a six-to-12 month program, the inmate shall be referred for non-residential drug abuse

treatment services.

To provide the full course of treatment to all participants, it is essential that a treatment staff to inmate ratio of 1:24 is maintained at all times. Treatment staff is defined as the drug abuse treatment program coordinator and the Drug Abuse Treatment Specialists assigned to the unit.

5.2.3  <u>Locations</u>.  Residential Drug Abuse Treatment programs are located at the following institutions:

| Mid-Atlantic Region | North Central Region |
|---|---|
| FPC-Alderson, WV | FCI-Englewood, CO |
| FCI-Butner, NC | USP-Leavenworth, KS |
| FMC-Lexington, KY | FCI-Oxford, WI |
| FCI-Milan, MI | FMC-Rochester, MN |
| FCI-Morgantown, WV | FPC-Yankton, SD |
| FPC Cumberland, MD | FCI-Florence, CO[1] |

\* (marks FCI-Milan, MI line)

| Northeast Region | Southeast Region |
|---|---|
| FPC-Allenwood, PA | USP-Atlanta, GA |
| FCI-Danbury, CT | FCI-Coleman-Low, FL[1] |
| FCI-Fairton, NJ | FCI-Marianna, FL |
| FCI-Fort Dix, NJ | FPC-Talladega, AL |
| FCI-McKean, PA | FCI-Tallahassee, FL |

| South Central Region | Western Region |
|---|---|
| FCI-Bastrop, TX | FPC-Dublin, CA |
| FPC-Bryan, TX | FCI-Dublin, CA |
| FCI-El Reno, OK | FCI-Lompoc, CA |
| FCI-La Tuna, TX | USP-Lompoc, CA |
| FCI-Seagoville, TX | FCI-Phoenix, AZ |
| FPC-Texarkana, TX♦ | FCI-Sheridan, OR |
| FCI-Three Rivers, TX | FPC-Sheridan, OR    \* |
| FMC-Fort Worth, TX | FCI-Terminal Island, CA |

[1]  Programs activated in Fiscal Year 1996.

5.2.4  <u>Program Proposals</u>.  Wardens who wish to develop a residential drug abuse treatment program, or move an existing residential program, must submit a written proposal through the Regional Director to the Assistant Director, Correctional Programs Division, Central Office.

5.3  <u>Program Elements</u>.  The following are considered to be the minimum requirements for all Residential Drug Abuse Treatment programs in the Bureau of Prisons:

\*    5.3.1  <u>Unit-based Housing</u>.  All residential drug abuse treatment program participants must reside together in the same unit.  This is critical to building a sense of community and cohesiveness among participants and staff and promotes conformity and compliance with program rules and philosophy.  The social and physical environment of all residential treatment units should reinforce program goals and objectives at all times.

All inmates living on the unit must be:

- participating in the program,
- waiting to begin participating in the program, or
- waiting to transfer out of the unit for reasons of
completion, expulsion, or withdrawal.

When space is available, inmates who have completed the unit-based component of the program may remain on the unit while in institutional transitional services.                                    *

5.3.2  <u>Treatment Phases</u>.  The Residential Treatment Program Handbook, (Volumes 1-5), specifies the required phases of treatment, the content of treatment modules, and required treatment services for at least 450 of the 500 required hours of programming.  The treatment regimen outlined in the Handbook is based on current research and practice in drug abuse treatment and is consistent with the Bureau's philosophy of treatment discussed above.  Optional programming offered should be consistent with and supportive of the goals, objectives, and substantive content of the Handbook.

*       5.3.3  <u>Assessment</u>.  All inmates applying for admission to residential treatment after October 31, 1994 must be interviewed using the <u>Residential Drug Abuse Program Eligibility Interview</u> prior to program acceptance.  Drug abuse treatment staff at residential programs will also use the <u>Residential Drug Abuse Treatment Planning Interview</u> as the foundation for treatment planning prior to the inmate's completion of the Orientation Phase of treatment (see 5.3.4 below).                                         *

5.3.4  <u>Treatment Plans</u>. A treatment plan must be completed on each inmate participant prior to completion of the Orientation Phase of treatment.

5.3.5  <u>Incentive Program</u>.  All residential treatment programs must offer an incentive program to enhance inmate participation in treatment (see Section 5.5 below for further discussion).

5.4  <u>Program Procedures</u>.

5.4.1  **[a.  <u>Eligibility</u>. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**

**(1)  The inmate must have a verifiable documented drug abuse problem.]**  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the
*       <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence

indicated in the <u>Diagnostic and Statistical Manual of the Mental
Disorders, Fourth Edition, (DSM - IV)</u>.  This diagnostic impression
must be reviewed and signed by a drug abuse treatment program
coordinator.

Additionally, there must be verification in the Presentence
Investigation (PSI) report or other similar documents in the
central file which supports the diagnosis.  Any written
documentation in the inmate's central file which indicates that
the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse
or dependence was made via the interview, shall be accepted as
verification of a drug abuse problem.                              *

When a positive urinalysis in the institution is the only
documentation of substance use, the inmate shall be referred to
drug education or non-residential treatment.  While in drug
education and/or non-residential drug abuse treatment services,
the inmate shall be further observed and examined regarding
*   his/her substance use problem.  If counseling indicates the need
for more intensive treatment, the inmate may subsequently be
referred to a residential drug program.                           *

     **[(2)   The inmate must have no serious mental impairment which
would substantially interfere with or preclude full participation
in the program.**

     **(3)   The inmate must sign an agreement acknowledging his/her
program responsibility.]** (BP-S550.053 (Attachment B)).

     **[(4)   Ordinarily, the inmate must be within thirty-six
*   months of release.]**  Inmates are selected for admission to
residential programs based upon the time remaining on their
sentence.  Most inmates will complete residential drug abuse
treatment, participate in institution transitional services (if
time allows), and then transfer to a CCC.  When a residential      *
treatment program is not appropriate due to time constraints,
staff may refer the inmate for the institution's non-residential
drug treatment (see Chapter 4).

     **[(5)   The security level of the residential program
*   institution must be appropriate for the inmate.]**  When it is
necessary to transfer an inmate to a residential treatment program
at another facility, and the security level of that institution is
not consistent with the inmate's assigned security level, the drug
abuse treatment program coordinator shall ask the unit team to
submit a request for redesignation and application of a management
variable for program participation to the appropriate Regional
Designator.  If the request is approved, the Regional Designator
shall enter the appropriate management variable into SENTRY.  When
an inmate completes, fails, withdraws, or is expelled from the
residential program, the drug abuse treatment program coordinator
shall notify the unit team so

that appropriate action can be taken regarding movement or
transfer of the inmate (see Chapter 2, Section 2.3).                *

   5.4.2  **[b <u>Application/Referral/Placement</u>.  Participation in the
residential drug abuse treatment program is voluntary.  An inmate
may be referred for treatment by unit or drug treatment staff or
apply for the program by submitting a request to a staff member
(ordinarily, a member of the inmate's unit team or the drug abuse
treatment coordinator).  The decision on placement is made by the
drug abuse treatment coordinator.]**

   If an inmate is applying or being referred to a residential drug
abuse treatment program at another institution, see Chapter 2,
Section 2.3 for specific procedures.

   5.4.3  **[c <u>Completion</u>.  Completion of the residential drug abuse
treatment program requires attendance and participation in
scheduled individual and group activities and a passing grade on
examinations covering each separate subject module of the program.
An inmate who fails an examination on any subject module
ordinarily shall be allowed to retest one time.  A certificate of
achievement will be awarded to all who successfully complete the
program.  A copy of this certificate will be forwarded to the unit
team for placement in the inmate's central file.]**

*        <u>Module Testing Requirements</u>.  Testing will be conducted after
the completion of each module of the Drug Abuse Program Handbook.
A passing grade of 70 percent is required for each test before an
inmate may be considered a successful program completion.  Inmates
who do not pass the test shall be required to repeat the module
they fail prior to residential program graduation.

   Modules may be repeated using a variety of methods,
including, but not limited to:

   ♦  self-study;
   ♦  tutoring by DAP staff or a graduate-mentor; or
   ♦  requiring the inmate to join a new cohort.

   After the drug abuse treatment coordinator is satisfied the
inmate has had sufficient opportunity to repeat the module, the
inmate may take the module test again.                             *

   5.4.4  **[d <u>Withdrawal/Expulsion</u>.  (1) An inmate may withdraw
voluntarily from the program.]**  Withdrawals must be documented on
the Change in Drug Abuse Treatment Program Status Memorandum
(Attachment C) and forwarded to the unit team.  If the inmate was
previously determined eligible for early release, Attachment C
*   must also be forwarded to the Inmate Systems Manager to remove

the inmate's 3621(e) release date.  A copy of Attachment C shall
be provided to the Warden.  The drug abuse treatment program
coordinator shall make the appropriate changes to the inmate's
"DRG" program assignment(s).                                        *

   **[(2)  The drug abuse treatment coordinator may remove an
inmate from the program based upon disruptive behavior related to
the program.  Ordinarily, staff shall provide the inmate with at
least one warning prior to removal.  An inmate may not ordinarily
be removed immediately without warning unless the inmate, pursuant
to an incident report, is found by the DHO to have:**

      **(a)  Used or possessed alcohol or drugs;**

      **(b)  Been violent or threatened violence against staff or
another inmate; or**

      **(c)  Committed a 100 level prohibited act.]**

\*     In limited circumstances, an inmate may be removed from the
program without a formal warning, even when he or she has not been
found guilty of any of the three types of serious misconduct as
identified above. Ordinarily, the following factor must be present
before an inmate can be immediately expelled:

      ■    the inmate's behavior is of such magnitude that his
or her continued presence would create an immediate
and ongoing problem for staff and inmates.

    Whenever immediate expulsion is necessary without a formal
warning, drug abuse treatment staff shall:

      ■    meet with the inmate to discuss the misbehavior;

      ■    inform the inmate in writing, if he or she is to be
expelled from the program (and the reason for
expulsion); and

      ■  properly document these steps.

    In response to other types of disruptive behavior, drug abuse
treatment staff shall:

      ■    meet with the inmate to discuss the inappropriate
behavior;

      ■    develop treatment goals to reduce and eliminate the
inappropriate behavior;

PS 5330.10
CN-03 October 09, 1997
Chapter 5, Page 6A

- ■ warn the inmate of the consequences of failure to alter his/her behavior; and

- ■ properly document the treatment goal in the inmate's treatment plan as well as the steps outlined above, and ensure that both staff and the inmate sign the treatment plan.

In the event of a second or third incident of disruptive behavior, the drug abuse treatment coordinator may remove the inmate from the program or provide another warning using the same four-step procedure. However, in the event of a fourth incident of disruptive behavior, the inmate must be removed from the program.

Only the drug abuse treatment program coordinator or the Warden shall have the authority to expel an inmate from the unit-based portion of the residential treatment program. Ordinarily, *

the drug abuse treatment specialist shall make recommendations for expulsion and the drug abuse treatment program coordinator shall make the final decision.

Within two working days after a decision has been made to expel an inmate, the drug abuse program coordinator shall:

(a)  verbally notify the inmate of his/her expulsion status;

(b)  notify the inmate and appropriate institution staff in writing, through Attachment C, Change in Drug Abuse Treatment Program Status Memorandum;

(c)  remove the inmate from the program housing unit, and if necessary, initiate a transfer of the inmate back to a parent institution (see Section 3 below); and

(d)  update the pertinent SENTRY DRG assignments.

Inmates who withdraw from or are expelled by staff from a residential drug abuse treatment program may apply for readmission through a Request to Staff Member.  The drug abuse treatment program coordinator shall make the decision on readmission and inform the inmate in writing.  If readmitted to the same or to a different residential drug abuse treatment program, the inmate shall not be given any credit for prior treatment participation. *

**[(3)  Withdrawal or removal from the residential program may result in the inmate's being returned to his/her prior institution (when the inmate had been specifically transferred for the purpose of program participation).]**

5.4.5  <u>Treatment Documentation</u>.  The following are required for all inmates in treatment in a Residential Drug Abuse Treatment program:

♦  A completed <u>Residential Drug Abuse Program Eligibility Interview</u> supporting a DSM-IV impression of an alcohol or drug disorder, (for all inmates entering treatment on or after October 31, 1994).

*     ♦  An individualized treatment plan shall be entered in PDS.
Treatment plans are to be completed based on the <u>Residential      *
Drug Abuse Program Planning Interview</u> prior to completion of the Orientation Phase of the residential drug abuse treatment program. Treatment plans must be updated as goals and progress change.

♦ A clinical progress review for each residential participant should occur every 60 days. This progress review consists of a meeting of the treatment team during which an inmate's progress toward treatment goals is discussed and new goals/activities are established if necessary. An inmate is not required to be present during the review. The drug abuse treatment program coordinator shall be responsible for ensuring that the progress review is documented in PDS. Changes in treatment goals shall be discussed with the inmate and initialled by the inmate.

♦ Upon an inmate's completion of the unit-based portion of a residential program, a Treatment Summary and Referral Form (BP-S549.053 (Attachment D)) shall be completed within 30 days and
\* forwarded to the unit team for placement in the central file. If the inmate's Community Corrections Center Referral Packet has already been forwarded to the CCM, the drug abuse treatment coordinator is responsible for sending the completed Treatment Summary and Referral Form to the Transitional Services Manager in the region of the inmate's release not more than two weeks from the inmate's graduation date.

♦ As inmates enter the final phase of treatment ("Transitional Treatment" phase - see Handbook), treatment staff are to determine if the inmate has a stipulation to participate in treatment under his or her period of supervised release. If the inmate <u>does not</u> have such a condition, drug abuse treatment staff are to complete a Request for Aftercare Stipulation Memorandum (Attachment E) and request (but not require) inmates to sign the accompanying Waiver of Hearing to Modify Court Order (BP-S544.053 (Attachment F)). If the inmate agrees to a waiver, \* both forms should be forwarded to the appropriate U.S. Probation Officer, in coordination with the unit team.

5.4.6 <u>Certificates</u>. Certificates of completion shall be awarded to all inmates who successfully complete the unit-based component of the Residential Drug Abuse Treatment program. The drug abuse treatment program coordinator shall be the determining authority in judging program completion.

5.4.7 <u>Urine Surveillance</u>. Ordinarily, inmates in residential drug programs shall be subject to the same urine surveillance frequency as the general population. However, consistent with the Program Statement on "Urine Surveillance to Detect and Deter Illegal Drug Use", unit and treatment staff or any institution staff who suspects alcohol or drug use by an inmate in a residential program should contact the Urine Surveillance Program Coordinator in the institution to place that inmate on the suspect list for an increased schedule of urine surveillance.

P.S. 5330.10
CN-01, May 17, 1996
Chapter 5, Page 9

5.5  [**Incentives for residential drug abuse treatment program participation** § 550.57

**a.  An inmate may receive incentives for his or her satisfactory involvement in the residential program. These incentives may include, but are not limited to, the following.**

**(1)  Limited financial awards, based upon the inmate's achievement/completion of program phases.]**  These financial awards may be provided as participants successfully move through the program.  The awards should be based upon achievement rather than mere attendance. Each residential program should require participating inmates to meet the following guidelines in order to receive the standard award:

- The inmate has no unexcused absences from group or individual program activities;

- The inmate has at least a 95 percent promptness rate for all scheduled program activities;

- The inmate has received no incident reports for which he/she was found guilty by the Unit Disciplinary Committee or Disciplinary Hearing Officer; and

- The inmate has successfully completed all program assignments, including, but not limited to group work; readings; homework; and established treatment goals.   *

The standard amounts for awards are $30.00 for the first quarter of successful program participation, $40.00 for the second quarter, and $50.00 for the third quarter for a possible total award of $120.00.  At 12 month programs, a fourth quarter award of $60.00 should also be provided to those who meet eligibility criteria, for a possible total of $180.00.  With appropriate documentation, the drug abuse treatment program coordinator may modify the above standards in individual cases. Award payments shall be based upon an inmate's enrollment and completion dates, not fiscal year quarters.  The drug abuse treatment program coordinator is responsible for completing the necessary requests and submitting them to the institution's
*  Performance Pay Coordinator.                                          *

These awards for eligible inmates help to offset the loss of performance pay which an inmate incurs as a result of participating in a residential program.  Historically, inmates have cited the loss of performance pay as a reason for not participating in the program or as a reason for withdrawing from a program.

Funding for financial incentives for program participants has been considered in the development of the Inmate Performance Pay (IPP) budget formula.  Funds appropriated for drug treatment services are added to IPP cost centers at institutions with residential programs to support the incentive program.  These monies may not be used for purposes other than residential drug abuse treatment program incentives.

**[(2)  Consideration for the maximum period of time (currently 180 days) in a Community Corrections Center placement, provided the inmate is otherwise eligible for this designation.]**

\*     Community transitional drug treatment services is a critical component of the residential drug abuse treatment program. Accordingly, the Warden is strongly encouraged to approve inmates who successfully complete a residential drug treatment program for the maximum 180 day period of CCC placement.  Similarly, CCMs shall, when possible, ensure that inmates required to participate in community transition services are placed in a CCC for the maximum amount recommended by the Warden.

However, there may be administrative factors (e.g., bedspace limitations at a CCC) or community safety concerns (i.e, exclusionary criteria) that require consideration for a CCC placement of less than the recommended maximum of 180 days. Then, the fundamental goal for both the Warden and CCM is to seek placement for a period of time as near to 180 days as possible without negatively impacting bedspace limitations in contract facilities or jeopardizing community safety.

Additionally, the 18 U.S.C. §3621(e) release date shall be established to provide the residential drug program graduates with a reasonable opportunity to spend up to 180 days in a CCC even if this results in an early release period of less than 12 months. This means that unit teams must construct CCC release plans which maximize lengths of time in the CCC rather than the maximum reduction in sentence under §3621(e).                                    \*

**[(3)  Local institution incentives such as preferred living quarters or special recognition privileges.]**
\*                                                                        \*

To assist in recruiting inmates locally for residential drug abuse treatment, Wardens are encouraged to consider ways in which the treatment unit may be seen as preferred living quarters (e.g., washer/dryer access, special recreation or dining privileges).

**[(4)  If eligible under § 550.58, consideration for early release.]**  See Chapter 6 for further information on early release procedures.

**[b  An inmate must meet his/her financial program responsibility obligations (see 28 CFR part 545) prior to being able to receive an incentive for his/her residential program participation.]**

28 CFR part 545 refers to the Program Statement on the Inmate Financial Responsibility Program.  If an inmate is not meeting his/her financial responsibility obligations, his/her treatment plan should include specific goals related to meeting this
* obligation.                                                            *

**[c  Withdrawal or removal from the residential program may result in the loss of incentives previously achieved.]**

5.6  <u>Residential Drug Abuse Treatment for Mariel Cubans</u>.  FCI Englewood has been designated as a Residential Drug Abuse Treatment program for INS detained Mariel Cubans.  The Cuban (CuDAP) parallels the BOP's 500 hour Residential Drug Abuse Treatment program with a few exceptions:

♦  The CuDAP compresses the 500 minimum hours of treatment into a four month time period;

♦  Program delivery is bi-lingual (Spanish/English);

♦  Inmates are assigned to a class in English as a Second Language for 100 of the 500 hour program; and

♦  Graduates of the program are released to a community sponsor or a community corrections center.

Post-release issues are emphasized in the CuDAP program and transitional services are available to these program graduates. The purpose of this program is to assist in the release of INS detained Mariel Cubans who demonstrate a need for drug abuse programming.

## CHAPTER 6

### EARLY RELEASE QUALIFICATIONS

\* 6.1 [Consideration for Early Release §550.58.  An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a non-violent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.]

6.1.1 [a.  Additional Early Release Criteria.  (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

(i)  INS detainees;

(ii)  Pretrial inmates;

(iii)  Contractual boarders (for example, D.C., State, or military inmates);

(iv)  Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offenses;

(v)  Inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion;

(vi) Inmates whose current offense is a felony:

(A) that has an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

(B) that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or

(C) that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or

(D) that by its nature or conduct involves sexual abuse offenses committed upon children.]

The rules language contained above in (6)(a),(b),(c), and (d), is also contained as implementing text in the Program Statement on Categorization of Offenses.  This policy has been developed to assist in the implementation of various Bureau policies and programs.  More specifically, an inmate may or may not be qualified for early release under 18 U.S.C. § 3621(e) in the following circumstances:                                                    *

    (1)   <u>The inmate has been sentenced pursuant to Title 18 U.S.C. Chapter 227, Subchapter D</u>.  This subsection indicates that an inmate has been sentenced under the Sentencing Reform Act (SRA), or the "new law".  Ordinarily, these inmates have been sentenced for an offense that occurred on or after November 1, 1987.  Additionally, if an inmate is serving an SRA "new law" sentence, he or she cannot be a contractual border, an INS detainee, or a pretrial inmate;

    ▪ INS detainees and pretrial inmates may be held in Bureau custody, but they are <u>not</u> serving a federal sentence under SRA, or the "new law".

*    (2)   <u>The inmate's current conviction does not exclude him/her from early release according to the Categorization of Offenses Program Statement</u>.  Generally, the Program Statement on Categorization of Offenses guides unit teams in determining whether the current offense requires exclusion from early release. Specifically:

    ▪ Instant offense determinations for inmates who have a SENTRY assignment of DAP WAIT on the effective date of the Change Notice Number 3, and future volunteers are based on the Program Statement, Categorization of Offenses.

    ▪ Instant offense determinations for inmates who are either participating in or have completed residential drug abuse treatment (DAP PART, DAP INCOMP or DAP COMP) on the date of Change Notice Number 3 are based on the Program Statement Definition of Term, Crimes of Violence and accompanying Operations Memoranda (see section 6.3.2 of this chapter for further instructions).

    (3)   <u>The inmate's prior adult criminal record includes no convictions which disqualify him/her for early release, based on the Director's Discretion</u>.  <u>Any</u> adult misdemeanor or felony conviction for Homicide (including Non-Negligent Manslaughter), Forcible Rape, Robbery, Aggravated Assault, or Child Sexual Abuse are crimes that disqualify an inmate for early release; drug abuse treatment program coordinators must review available documents containing criminal history to ensure the inmate does not have any prior adult convictions for these crimes.  "Previous adult convictions" includes criminal convictions that occur at <u>any time</u>, prior to the inmate's § 3621(e) release date.  Prior convictions in other countries must also be considered.

With regard to prior offenses, juvenile adjudications and disciplinary findings cannot be used to deny an inmate a 3621(e) sentence reduction.

To verify if a prior conviction for a state child sexual abuse offense would disqualify an inmate for early release, DAP staff should refer the appropriate documentation to local legal counsel for a final determination. Legal staff will compare the elements of the prior state offense with the Federal child sexual offense provisions listed in 18 U.S.C. §§ 2241, 2242, 2243, and 2244(a). If the elements of the prior state offense are similar to the elements of any of the above referenced Federal offenses, the inmate shall be disqualified for early release.

In <u>rare</u> instances, an aggravated assault can be a misdemeanor conviction. Additionally, the PSI is not always clear on whether a conviction for:

- assault is aggravated,
- a homicide is non-negligent,
- a sexual assault constitutes forcible rape, or
- sexual abuse of children is an offense that disqualifies the inmate.

Therefore, DAP staff should request institution legal counsel to make the final determination when uncertainty exists. A record of this determination should be noted in the inmate's DAP records.
                                                                              *

(4) <u>The inmate has successfully completed all parts of the Bureau's residential drug abuse treatment program</u>. Inmates receiving an early release under § 3621(e) must have successfully completed a residential drug abuse treatment program for a minimum of 500 hours for at least six months in a unit-based treatment environment, separated from general population as well as those additional residential program components described in Chapter 5, Section 5.2.1.

(5) <u>The inmate is not excluded from a community-based program placement</u>. For early release consideration under § 3621(e) and in accordance with the opening paragraph of this section, an inmate must be able to participate in community-based programs so as to complete the transitional services component of treatment in a Community Corrections Center or on home confinement.

Finally, there are two groups of inmates that require further direction concerning a § 3621(e) sentence reduction:

♦ inmates with physical or medical disabilities who may be eligible for § 3621(e) release consideration, and
♦ inmates with detainers who were participating in a residential drug abuse program on or before August 17, 1995.

(1)  <u>Physical/Medical Disabilities</u>.  Inmates who volunteer for residential drug programs and have physical disabilities or medical conditions that require their assignment to a unit other than the DAP unit to ensure handicap accessibility or medical monitoring may be considered for a § 3621(e) release.   To qualify, inmates must be:

- otherwise eligible for the residential drug program;

- able to fully participate in all aspects of the program including evening groups or other evening activities conducted in the treatment unit;

- able to be held accountable to the same standard of treatment and conduct as all other residential drug abuse treatment participants (e.g., complete homework, participate in all assigned groups, behavior consistent with treatment requirements, etc.); and

- eligible for a Community Corrections Center or home confinement placement, enabling full participation in community transitional services.

*     Although Health Services staff are always the final decision-maker regarding an inmate's placement outside of the drug treatment unit for medical reasons, drug abuse treatment staff are responsible for identifying, monitoring, and documenting this exception in the inmate's DAP records and on the Attachment K. Ordinarily, these inmates are excused from residential drug treatment unit activities only for reasons of sleep and unit accountability purposes (special census counts, etc.).              *

(2)  <u>Detainers</u>.  Inmates with detainers who were participating in a residential drug abuse treatment program on or before August 17, 1995, and who subsequently completed this treatment may be released directly from the institution to their detainer by way of a §3621(e) release.  Specifically, the inmate must have been in "DAP PART" status and in a separate drug treatment unit on or before August 17, 1995 to be considered for early release to a detainer.  When necessary, staff should assist inmates to resolve a detainer (if resolution is required) so that he or she can participate in the required community transitional services program.  When a detainer cannot be resolved or does not require resolution (e.g., INS detainer, consecutive state sentence), the inmate shall be required to participate in institution  transitional services for at least 180 days before releasing under § 3621(e) to his or her detainer.

6.1.2  <u>Inmates Who Completed a Residential Drug Abuse Treatment
Program Prior to October 1, 1989</u>. **[a. Eligibility. (2) An
inmate who had successfully completed a Bureau of Prisons
residential drug abuse treatment program before October 1, 1989 is
otherwise eligible if:**

> **(i)  Staff confirm that the completed program matches the
> treatment required by statute;**

> **(ii)  The inmate signs an agreement acknowledging his/her
> program responsibility;**

> **(iii)  The inmate completes a refresher treatment program and
> all applicable transitional services programs in a
> community-based program (i.e., in a Community
> Corrections Center or on home confinement); and**

> **(iv)  Since completion of the program, the inmate has not been
> found to have committed a 100 level prohibited act and
> has not been found to have committed a prohibited act
> involving alcohol or drugs.]**

Staff shall ensure that inmates applying for early release
consideration based on successful treatment <u>before</u> October 1, 1989
follow the application guidelines and program requirements set
forth in Attachment L.

6.1.3  <u>Retroactivity - On or After October 1, 1989</u>.  **[(3) An
inmate who has successfully completed a Bureau of Prisons
residential drug abuse treatment program on or after October 1,
1989 is otherwise eligible if:**

> **(i)  The inmate completes all applicable
> transitional services programs in a community-
> based program (i.e., in a Community
> Corrections Center or on home confinement);
> and**

> **(ii)  Since completion of the program, the inmate
> has not been found to have committed a 100
> level prohibited act and has not been found to
> have committed a prohibited act involving
> alcohol or drugs.]**

Any inmate who successfully completed the residential drug abuse
treatment program on or after October 1, 1989 shall notify his/her
drug abuse treatment program coordinator via a Request to Staff
Member form.  The Coordinator or designee, shall, upon
notification, verify the inmate's successful residential drug
abuse program completion status, including the institution
transition requirement of treatment, <u>and</u> review the PSI for the
relevant history of violence.

*     Drug abuse treatment staff shall provide this documentation to
the appropriate unit team using the Notice of Residential Drug
Abuse Program Qualification and Provisional § 3621(e) Eligibility
form (Attachment J) (see Section 6.3).  The drug abuse treatment
program and the date of graduation must be noted in the comment
portion of Section 1.  Section 2 must also be completed             *
to finalize the inmate's provisional § 3621(e) eligibility status.
Attachment H must be completed and routed to Inmate Systems
Management (ISM) via the Warden, when applicable.

     6.1.4  <u>Parole Eligible Inmates</u>.  Parole eligible inmates who
successfully complete a residential drug abuse treatment program
lasting between six and 12 months, may, at the discretion of the
U.S. Parole Commission, be eligible for an advanced release date
through an award of Superior Program Achievement (SPA).  To
accomplish this, the drug abuse treatment program coordinator
shall prepare a Letter to the U.S. Parole Commission (Attachment
I), complete a Treatment Summary and Referral form (Attachment D),
and route both documents to the unit team, who shall then attach
the most recent Progress Report.

     The unit team shall then forward the entire packet to the Warden
for signature, who is to then send the packet to the U.S. Parole
Commission.  After notification, the U.S. Parole Commission will
make a decision on the record whether to grant SPA.  The results
of any positive action taken by the U.S. Parole Commission shall
be immediately forwarded to ISM.  <u>Inmates are not allowed to apply
for SPA</u>.

**6.2 [(b) <u>Application</u>.]**

   6.2.1  **[(1)  <u>Inmates Currently Enrolled</u>.  Eligible inmates
currently enrolled in a residential drug abuse treatment program
shall automatically be considered for early release.]**

   6.2.2  **[(2)  <u>Inmates Who Had Previously Completed Program
Requirements</u>.  Eligible inmates who have previously completed a
residential drug abuse treatment program (or which matches the
treatment required by statute) must notify the institution's drug
abuse program coordinator via a Request to Staff in order to be
considered for early release.]**

   6.2.3  <u>Inmates Who Are Applying for Participation in a
Residential Drug Program</u>.  The drug abuse treatment program
coordinator shall complete the following steps before accepting an
inmate into a residential drug abuse treatment program:

     ♦   determine the inmate's eligibility for admittance based on
the procedures set forth in Chapter 5, Section 5.4.1 (verifiable
substance abuse problem, etc.);

♦ determine the inmate's provisional early release eligibility (as described below in Section 6.3);

\*      ♦ notify the inmate of his/her qualification for residential drug treatment programming and provisional early release status (as described below in Section 6.3).

6.3 <u>Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility (Attachment J)</u>. The Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility, (Attachment J) shall be used as a checklist and notification mechanism to inform inmates, in writing, of:

♦ Qualification for Residential Drug Abuse Programs; and

♦ <u>Provisional</u> Eligibility for 18 U.S.C. § 3621(e) Early Release. Inmates must be specifically informed that a sentence reduction is contingent upon continued positive behavior and successful participation in all components of the program, including community transitional services.

Attachment J must be completed on all inmates applying for residential drug program participation, and is divided into two parts:

♦ Part I: a determination/review of residential drug abuse program qualification;

♦ Part II: a determination/review of an inmate's provisional § 3621(e) eligibility.

6.3.1 <u>Part I - Residential Drug Program Qualification</u>. If the drug abuse treatment program coordinator determines the inmate does not have a substance abuse disorder that can be documented, or is otherwise not qualified for residential treatment, only Part I of Attachment J must be completed. Part I notifies the inmate that he or she is not qualified for residential program participation.

If the drug abuse treatment program coordinator determines that the inmate does have a substance abuse disorder that can be documented, and he or she is otherwise eligible for the residential drug abuse program, Part II of Attachment J must also be completed to determine the inmate's provisional early release eligibility.

6.3.2 <u>Part II - Provisional Early Release Eligibility</u>. Completion of Part II requires consultation with the unit team to determine if the inmate's instant offense is an excluding crime within the Categorization of Offenses Program Statement, and if a detainer is currently lodged against the inmate.

Although unit team staff make determinations involving the instant offense, implementation of this new policy impacts drug program staff.  The following are steps that DAPCs must now follow to ensure effective implementation of the Categorization of Offenses Program Statement on § 3621(e) cases.

(1)  Inmates Not Yet Added to the DAP Waiting List on the Effective Date of Change Notice 3.  Before an inmate who volunteers for drug treatment is placed on the DAP WAIT list, DAP staff shall ensure completion of the:

♦ new Attachment N in this Change Notice (unit team determination of instant offense); and,
♦ Attachment J in this Manual.

Note: Inmates in this category shall have their instant offense reviewed pursuant to Program Statement, Categorization of Offenses.

(2)  Inmates on the DAP Waiting List on the Effective Date of Change Notice 3.  DAP Coordinators must have inmates sign an updated Agreement to Participate and are to ensure completion of the revised Attachment J and Attachment N for any inmate on the waiting list who is 3621(e) ineligible for reasons related to the instant offense.  DAP Coordinators can identify these inmates through Population Monitoring SENTRY rosters (use of CMA assignments in conditions - CMAG EQ VVA* or CMAG EQ VVB*). The Assistant Director, Correctional Programs Division, may identify, via BOP EMS, other cases that require a new Attachment J.

A revised Attachment J and updated Agreement to Participate is also necessary for any inmate who has a prior conviction for a child sexual abuse offense that would now exclude him or her from early release.  The same procedures apply for any inmate who has an instant offense of 18 U.S.C. §§ 2243 and 2245 (i.e., sexual abuse statutes), including completion of an Attachment N.  DAP Coordinators can identify these inmates through SENTRY rosters (use of PSF for Sex Offender in conditions - PUB EQ F), and/or review of the PSI report.

To reduce the administrative burden on staff, DAP Coordinators do not have to update the Agreement to Participate, or complete the new Attachment J and Attachment N for all other inmates who are on the DAP waiting list on this Change Notice effective date.

Note:  Although some inmates will not have a revised Attachment J and Attachment N completed, all inmates on the DAP Waiting list on this Change Notice effective date shall have their instant offense reviewed pursuant to the "Categorization of Offenses" policy before furlough transfer to a community-based program or release to a detainer (see

Section 6.6 for instructions that unit staff must follow).

(3) <u>Inmates Participating in or Having Completed the Unit-Based Portion of Residential Drug Treatment Program on the Effective Date of Change Notice 3</u>.  Completion of a new Agreement to Participate, a revised Attachment J and Attachment N is <u>not</u> necessary for inmates who began participating in or who completed the unit-based portion of the drug program (i.e., DAP PART, DAP INCOMP or DAP COMP).

> <u>Note</u>:  Inmates in this category shall have their instant offense reviewed pursuant to the Definition of Term, Crimes of Violence, policy and related Operations Memoranda.

(4) <u>Unit Team Evaluation of Categorization of Offenses</u>. When unit team staff are required to make instant offense determinations for 3621(e) cases, the following procedures apply:

<u>Step 1</u> - Unit team staff should first determine whether the offense is listed as a crime of violence in the Categorization of Offenses policy.  If the current offense is a crime of violence, then the inmate is ineligible for early release.  If the current offense is not a crime of violence, then unit team staff must go to step 2.

<u>Step 2</u> -  Unit team staff must then determine whether the current offense is identified as a crime under the Director's Discretion.  If the current offense is a crime identified in the Director's Discretion section, then the inmate is ineligible for early release.

<u>Step 3</u> - If the current offense is not a crime of violence, and it is not a crime identified in the Director's Discretion section of Categorization of Offenses, then the instant offense would not exclude him or her from receiving an early release benefit.

<u>Step 4</u> - Unit team staff are to complete Attachment N to formally notify the DAP Coordinator of the inmate's eligibility or ineligibility for early release.

The drug abuse treatment program coordinator shall enter the appropriate SENTRY DRG category assignments related to § 3621(e) eligibility and treatment status (e.g., "DAP WAIT" or "DAP PART.") whenever a revised Attachment J is necessary, and completed.  A copy of Attachment J shall be placed in the treatment file and a copy provided to the unit team for placement in Section 4 of the inmate's central file.                                          *

The DAP Coordinator shall complete the Notification of Provisional Determination for 18 U.S.C. § 3621(e) Sentence Reduction (Attachment H) only when the inmate begins treatment and is assigned the "DAP PART" SENTRY assignment.  Attachment H is routed to ISM and serves three primary purposes:

♦ Formally requests Warden's review and signature of provisional § 3621(e) eligibility;

♦ Establishes a provisional § 3621(e) release date in SENTRY after ISM receives the Warden's approval to do so; and

\*     ♦ Notifies the unit team of the inmate's new provisional release date for pre-release planning purposes.     \*

**6.4. [(c) <u>Length of Reduction</u>. (1) Except as specified in paragraphs (c)(2) and (3) of this section, an inmate who is approved for early release may receive a reduction of up to 12 months**. (Paragraph (c)(3) is now in section 6.7 of this chapter).

**(2) If the inmate has less than 12 months to serve after completion of all required transitional services, the amount of reduction may not exceed the amount of time left on service of sentence.]**

\*    6.5  <u>Loss of Provisional Early Release</u>. An inmate may lose his or her provisional early release at any time for failure to successfully complete all components of the drug treatment program (including transitional services), or for committing certain prohibited acts.     \*

Inmates are to be advised that they may use the administrative remedy procedure to appeal decisions regarding early release.

   6.5.1  <u>Monitoring Provisional Early Release During the Unit-Based Segment of the Residential Drug Abuse Treatment Program</u>. While the inmate is in a residential drug abuse program unit, the drug abuse treatment program coordinator is responsible for monitoring and notifying staff and inmates when changes occur.

  This monitoring involves coordination with the unit team and ISM staff. Since detainers may be removed or lodged, pending charges resolved or discovered, disciplinary action taken, judicial recommendations received, etc., an inmate's provisional early release status may change at any time.

  When an inmate provisionally determined for a § 3621(e) sentence reduction requires a change to preclude such a reduction, the drug abuse treatment program coordinator must immediately complete and route the Change In Drug Abuse Treatment Program Status Memorandum (Attachment C) through the unit team to ISM staff. ISM staff are to promptly remove the § 3621(e) release date upon receipt of Attachment C. A copy of Attachment C shall be provided to the Warden. The DAPC is responsible for ensuring the DRG SENTRY assignments are changed, specifically "ELIGIBLE" is changed to "INELIGIBLE" and that program completion assignments are replaced with program failure assignments, if applicable.

Regarding furloughs, an inmate's eligibility for furloughs pursuant to 28 CFR § 570.34(e) shall be based on the "3621E CMPL" date.  However, inmates currently enrolled in drug treatment programs may be denied furloughs when institutional staff believe their absence on furlough would disrupt their treatment regimen.

6.5.2  <u>Monitoring Early Release After Completion of the Unit-Based Segment of the Residential Drug Program</u>.  When the inmate is transferred to another unit or institution after completion of the residential drug unit component, the receiving unit team is responsible for monitoring the inmate's early release eligibility and notifying ISM and the institution DAP Coordinator of any changes when they occur.

Unit team monitoring of an inmate's early release status after completion of the unit-based treatment program is critical since the inmate must continue to demonstrate positive behavior for continued § 3621(e) consideration.  An inmate shall lose his or her provisional early release date immediately if the DHO/UDC finds the inmate, pursuant to an incident report, to have:

- Used or possessed alcohol or drugs;
- Been violent or threatened violence;(including code-203, but not limited to this code)
- Committed a prohibited act (100 series); and/or
- Committed a prohibited act involving alcohol or drugs since completing the unit-based segment of the program.

If a DHO/UDC finds that an inmate, who previously completed the unit-based component of a residential drug abuse treatment program committed any infraction above, the unit team must complete a Change in Drug Abuse Treatment Status (Attachment C) and forward it to ISM, with a copy sent to the institution drug abuse treatment program coordinator.  Attachment C must also be completed, when the Warden finds an inmate, who was previously determined provisionally suitable for § 3621(e) release, to be ineligible for CCC placement.  ISM staff are to promptly remove the § 3621(e) release date upon receipt of Attachment C.  A copy of Attachment C shall be provided to the Warden.

Upon receiving Attachment C, the drug abuse treatment program coordinator must immediately make the appropriate SENTRY assignment changes. Specifically, "ELIGIBLE" must be replaced with "INELIGIBLE."  If necessary, "DAP COMP" shall be changed to "DAP FAIL O"; "NR TS COMP" shall be changed to "NR TS FAIL."

An inmate's eligibility for furloughs pursuant to 28 CFR § 570.34(e) shall be based on the "3621E CMPL" date after the completion of the unit-based treatment component.

6.6  <u>Final Review of Inmate's Provisional § 3621(e) Eligibility</u>.
The decision to grant an inmate early release is a significant one
for the Bureau of Prisons; therefore, it is essential that
institutional staff carefully review all relevant statutory and
regulatory criteria before final release of an inmate under Title
18 U.S.C. § 3621(e).

The unit manager or designee must ensure completion of revised
Attachment K, "Final Review of Inmate's Provisional Early Release"
before transfer to a community-based program or detainer.
Attachment K must always be completed and routed to the Warden;
ordinarily, Attachment K should be routed along with other final
release paperwork (furlough transfer form, release and gratuity
form, etc.).

The drug abuse treatment program coordinator and CMC must
review and sign Attachment K prior to the Warden's review.  The
Drug Abuse Treatment Coordinator shall ensure that items
*    1, 2, and 3 are accurate.  Once Attachment K is signed and dated,
a copy must be filed in the disclosable portion of Section 5 in
the inmate central file.  The original Attachment K shall be
forwarded to the ISM for filing in the J&C file.

Unit team staff must answer question 8 (A) of Attachment K for any
inmate who began participation in the unit-based portion of the
drug treatment program on or after the effective date of Change
Notice 3.  Unit team staff must answer question 8 (B) for any
inmate who began participation before the effective date of Change
Notice 3.  An inmate's DAP PART beginning date can be identified
using SENTRY's Inmate History function, DRG Category.

<u>No inmate shall be released from custody or transferred to a
community-based program under 18 U.S.C. § 3621(e) until the ISM
receives the Attachment K with all appropriate signatures</u>.          *

*    6.7  <u>Monitoring Early Release While in a Community-based Program</u>.
**[c (3)  If the inmate cannot fulfill his or her community-based
treatment obligations by the presumptive release date, the
Community Corrections Regional Administrator may adjust the
presumptive release date by the minimum amount of time necessary
to allow for fulfillment of the treatment obligations.]**

The Community Corrections Manager and the Transitional Services
Manager are responsible for monitoring the inmate's early release
status while the inmate resides in a CCC or on home confinement.
Though most inmates will successfully complete this portion of the
drug program and be granted early release on the presumptive date
that was set by institutional staff, some inmates may not complete
the community transitional services on time.  Others will require
removal from the program and return to a more secure setting.

6.7.1  <u>Disciplinary Conduct</u>.  The DHO shall recommend, at a minimum, a disciplinary transfer for any inmate who is participating in community transitional services when the inmate has a presumptive early release date, and, pursuant to an incident report is found to have committed:

- ■ a greatest severity prohibited act (100 level); or,

- ■ any prohibited act involving alcohol (including but not limited to code 222); or,

- ■ a prohibited act involving violence or the threat of violence (including but not limited to code 203.)

The DHO/CDC may or may not recommend disciplinary transfer for an inmate found to have committed a less serious infraction (codes 300, 400 and codes 200 unrelated to alcohol).

6.7.2  <u>Delaying Early Release for Unresolved Disciplinary</u> <u>Conduct</u>.  Inmates are sometimes administratively transferred from a community-based program to a more secure setting pending the resolution of a disciplinary hearing.  When the inmate is less than 30 days from his or her provisional § 3621(e) date when transferred to a local Bureau facility for the purpose of a disciplinary hearing, the CCM, in conjunction with the CCRA, may delay the § 3621(e) release date for a period of time to resolve the incident report.  Attachment O shall be completed in this situation.  Thus, CCM staff shall complete this form and send it via facsimile to the Inmate Systems Manager when this occurs.

When the inmate has more than 30 days from his or her provisional early release date when transferred to a local Bureau facility for the purpose of a disciplinary hearing, the local DAP Coordinator shall complete Attachment O and forward it to the Inmate Systems Manager, if necessary.   The DAPC shall contact the DHO to determine the approximate amount of time necessary to resolve the incident report. {<u>Note</u>: the institutional DAPC may want to wait for the DHO action, and complete the Attachment C, if applicable}.

Ordinarily, if the incident report does not result in a finding of guilt, the inmate should be transferred to a community-based program as soon as practical to resume transitional services. The inmate's provisional release date, if delayed to resolve the pending disciplinary action, may need to be adjusted a second time. If returned to a community-based program, CCM staff should adjust the release date to reflect the actual number of days community treatment services was interrupted.

<u>The Inmate Systems Manager shall always contact the local DAP</u> <u>Coordinator when an inmate provisionally approved for early</u> <u>release has been returned from a community-based program for</u> <u>disciplinary hearing purposes</u>.

6.7.3  <u>Reducing the Early Release Benefit</u>.  To delay early release in a community-based program, the TSM must make a recommendation to the CCRA, through the Management Center Administrator (MCA).

There are two primary circumstances when a CCRA may delay early release:

(1)  the inmate cannot fulfill his or her community transitional services obligations by the presumptive § 3621(e) release date, and

(2) the additional time in community transitional services will increase the likelihood that the inmate will refrain from drug use and criminality.

The following are some situations when the TSM may recommend to the CCRA that an inmate's early release time should be delayed:

- the inmate's participation in community transitional services is interrupted for reasons beyond the inmate's control (writs, transfer due to unanticipated CIM concerns, medical problems, etc.).

In this circumstance, the CCRA may reduce the early release benefit only for a minimum period of time to allow the inmate to meet his or her treatment obligations.

- the contract provider's monthly report indicates that the inmate is not satisfactorily participating in the community transitional services component, and/or not complying with the recommendations in the treatment summary and relapse prevention plan.

- the inmate receives a disciplinary sanction for a less serious prohibited act and the DHO has not imposed a disciplinary transfer.

In this circumstance, a CCRA decision to delay must be directly related to a treatment obligation; for example, the inmate's relapse prevention plan states that anger management is a specific objective, and the CDC has found that the inmate committed the prohibited act of insolence towards a staff member.

- other circumstances directly related to and impacting community transitional services.

   The CCRA shall always make the final determination when early
release is delayed. If the CCRA determines that a § 3621(e)
release date shall be delayed, the CCM shall establish a new
§ 3621(e) release date in SENTRY. The CCM shall closely monitor
this new § 3621(e) release date for release purposes.

   The TSM/CCM must complete Attachment C to this Program Statement
when appropriate (e.g. returned to secure custody).   *

CHAPTER 7

TRANSITIONAL SERVICES

7.1  [**Transitional drug treatment services** § 550.59.  **Transitional treatment programming is required for all inmates completing an institution's residential treatment program.  Transitional treatment includes treatment provided to inmates who, upon completing the residential program, return to the general population of that or another institution or who are transferred to a community-based program.  An inmate's refusal to participate in this program is considered a program failure and disqualifies the inmate for any additional incentives consideration, and may result in the inmate's redesignation.]**

Transitional services may also be provided to other eligible inmates who volunteer for treatment upon release to the community.

Research and experience demonstrate that treatment upon the inmate's release to the community is a critical component of effective substance abuse treatment.  Successful transitional service programs require a systemic community transition procedure which includes effective transfer/sharing of information between the institution and the community.

7.2  <u>Transition to General Population</u>.  When the inmate completes a residential program, the Drug Abuse Treatment Coordinator is to ensure that the inmate's SENTRY DRG assignment is updated and that the Treatment Summary and Referral Form (BP-S549.053) is completed and forwarded to the unit team for placement in the inmate's central file.  The Drug Abuse Treatment Coordinator should also ensure that transitional services programming begins as described below and that the SENTRY DRG assignment is updated accordingly. If a transfer to another institution occurs, the Drug Abuse Treatment Coordinator at the receiving institution is to ensure that the Treatment Summary is reviewed, that transitional services begin or continue, and that the SENTRY DRG assignment is appropriately updated.

**[(a)  An inmate who successfully completes a residential drug abuse program and who participates in transitional treatment programming at an institution is required to participate in such programming for a minimum of one hour per month.]**

This minimum requirement, lasting 12-months or until the inmate's release (whichever comes first), is provided to keep the inmate engaged in the treatment process and to maintain treatment gains.  Documentation is to be consistent with those required in non-residential drug abuse treatment programming.

Inmates who participate in non-residential/institution transitional services for six months or more are required to have

an addendum, updating the inmate's treatment progress attached to

their Treatment Summary and Referral Form prior to their transfer to a CCC or release to supervision.  These Treatment Summary and Referral Forms shall be completed upon the completion of the inmate's transitional programming.

If a residential program graduate refuses to participate in transitional services within the institution general population, he/she is to be considered a program failure and the inmate's SENTRY DRG assignment should be updated accordingly (see Chapter 9).  The Drug Abuse Treatment Coordinator should notify the inmate's unit team and the team should not consider the inmate for maximum CCC placement.  The unit team and ISM shall be notified, via Attachment C.

7.3  <u>Transition to a Community Corrections Center</u>.  **[(b)  An inmate who successfully completes a residential drug abuse program and who, based on eligibility, is transferred to a Community Corrections Center (CCC), is required to participate in a community-based treatment program, in addition to the required employment and other program activities of the CCC.  The inmate's failure to meet the requirements of treatment may result in the inmate's being returned to the institution for refusing a program assignment.]**  Treatment planning, evaluation, and continued urinalysis testing are included in this treatment regimen. Ordinarily, treatment is required for a minimum of one hour per week.

7.3.1  <u>Responsibilities/Documentation</u>.  Drug Abuse Treatment Coordinators at all institutions are responsible for identifying residential program graduates who are within 12 months of their § 3621 projected release date and ensuring that the Treatment Summary and Referral Form (BP-S549.053) is up-to-date.  If an update is required, the updated summary should be forwarded to the unit team for placement in the inmate's central file.

The unit team is responsible for including the Treatment Summary and Referral Form (original and any updates) and a copy of the signed Agreement to Participate (BP-S550.053) in the CCC referral packets of inmates who are graduates of residential programs. They should also note the following on line 13 of the Institutional Referral for CCC Placement Form (BPS-210.073):

(1)  the inmate's supervision status upon release from Bureau custody (e.g., "the inmate is released from BOP to the supervision of U.S. Probation for a total of two years"), and

(2)  the words, "Transitional Drug Program".  This alerts the CCM and the CCC staff that the inmate should be participating in transitional services while in the CCC.  The unit team is also responsible for forwarding a copy of the entire CCC referral packet to the Regional Transitional Services Manager (TSM).

If more than six months has passed, and additional treatment or institutional transitional programming has occurred, an addendum is required to the Treatment Summary and Referral Form.  The Coordinator is responsible for ensuring an updated form is forwarded to the appropriate TSM prior to the inmates transfer to the CCC.

7.3.2  <u>Participation in Transitional Services</u>.  **[(c)  An inmate with a documented drug abuse problem but who did not choose to volunteer for the residential drug abuse program may be required to participate in transitional services as a condition of participation in a community-based program with the approval of the transitional services manager.]**

However, inmates who have completed a residential drug abuse treatment program receive priority placement in community transition programming.

Any inmate who is identified as in need of drug abuse treatment upon release to the community, including inmates housed in Intensive Confinement Centers (ICCs), may be referred for such services using the procedures noted above.  An inmate who volunteers or is referred, but who has not completed a residential drug abuse program in the institution, shall be placed in this program based on community-treatment availability.  An inmate referred to or volunteering for this program component must sign an Agreement to Participate (BP-S550.053).

7.4  <u>Transition to Supervised Release/Parole</u>.  The Bureau of Prisons does not provide funding for drug abuse treatment services for inmates who are released directly into supervised release or parole status.  However, for those inmates who have been identified as in need of transitional services, Drug Abuse Treatment Coordinators should forward a Treatment Summary and Referral Form (BP-S549.053) to the appropriate U.S. Probation Office to ensure that the U.S. Probation Office is aware that the inmate has been identified as needing drug abuse treatment services and should be referred for such services if they are available.

\*                                                                          \*

If accepted into a CCC, the inmate must be aware that community transitional services participation is part of the inmate's program plan while in the CCC.  Failure to adhere to a continuing treatment plan during the community-based placement while under Bureau of Prisons custody shall result in the inmate's return to the institution.  Whenever possible, any inmate who is returned to an institution as a result of non-compliance with treatment and/or drug use in the CCC should be returned to an institution with a residential treatment program.

\*                                                                    \*

Inmates in a CCC who have successfully completed a residential
program and who are later returned to the institution due to a
positive urine screen are immediately eligible for non-residential
treatment.  While these inmates do not have sufficient time
remaining to recomplete a residential program, good clinical
practice suggests they should be provided with the relapse
prevention and cognitive/behavioral sections of the  Handbook
while in non-residential counseling.

Inmates are to be advised that they may use the administrative
remedy procedure to contest their transitional services program
expulsion.

Inmates in a CCC who have successfully completed a residential program and who are later returned to the institution due to a positive urine screen are immediately eligible for residential or non-residential treatment.  While these inmates do not have sufficient time remaining to recomplete a residential program, good clinical practice suggests they should be provided with the relapse prevention and transitional services modules of the Handbook.

Inmates are to be advised that they may use the administrative remedy procedure to contest their transitional services program expulsion.

## CHAPTER 8

### INMATE APPEALS

8.1  **[Inmate Appeals §550.60**

  **[(a)  Administrative remedy procedures for the formal review of a complaint relating to any aspect of an inmate's confinement (including the operation of the drug abuse treatment programs) are contained in 28 CFR 542, subpart B.]**  28 CFR 542, subpart B refers to the Program Statement on the Administrative Remedy Procedure for Inmates.

  **[(b)  In order to expedite staff response, an inmate who has previously been found to be eligible for early release must, when filing an administrative remedy request pursuant to 28 CFR 542, subpart B on an action which would result in the inmate's loss of early release eligibility, indicate in the first sentence of the request that the request affects the inmate's early release.]**

8.2  Emergency Inmate Appeals.  An inmate may appeal his/her expulsion from a residential drug abuse treatment program or the loss of his/her early release eligibility through the usual Administrative Remedies process.

When the inmate alleges the administrative remedies process will affect the inmate's release date if the expulsion from treatment or the loss of eligibility is overturned, (within two years from release at the time of filing the administrative remedy), staff will determine the claim is of an emergency nature and process in accordance with 28 CFR, Section 542.14.  Once such a determination is made, there shall be no extensions granted at any stage of the administrative remedy process.

# CHAPTER 9

\*

## PROGRAM DOCUMENTATION

9.1  <u>Overview</u>.  Staff shall use SENTRY DRG assignments to document
the progression of inmates through drug abuse programs.  Staff are
guided by the following general rules in their use of SENTRY DRG
category codes:

■ Staff shall use DRG codes to promptly and accurately
document an inmate's status in programs.

■ Staff shall promptly correct errors in DRG codes when they
discover them.

■ Staff shall maintain only one current DRG assignment for
an inmate <u>within each program area</u>.

■ Staff shall assure that all DRG assignments are updated
before inmates are transferred to other institutions or CCCs,
and before inmates are released to the community.

The Drug Abuse Treatment Coordinator is responsible for ensuring
that DRG assignments are properly entered and maintained as
inmates progress through drug abuse program activities.  Unless
otherwise stated in this Program Statement, drug abuse program
staff at institutions are responsible for entering and updating
all DRG assignments.

9.2  <u>Classification of DRG Assignments</u>.  SENTRY DRG assignments
are divided into various program areas (i.e, residential, non-
residential, education).  While inmates move through various
stages and outcomes in each of these drug abuse program areas,
they are given an individual DRG assignment.  These individual
assignments can be placed into one of three broader
classifications:

■ <u>Screening</u>
■ <u>Participation</u>
■ <u>Termination</u>

These three classifications are intended to provide staff with a
logical framework to understand when to enter and update SENTRY
DRG assignments.  For example, a screening assignment (e.g., DAP
WAIT) is ordinarily replaced by a participation assignment (e.g.,
DAP PART), which shall be replaced by a termination assignment
(e.g., DAP COMP).

9.2.1  <u>Screening DRG Assignments</u>.  A screening assignment is
used to document a procedure of evaluation or is used for program
preparation purposes.  For example, ELIGIBLE is a screening
assignment because it documents that an inmate has been evaluated
for early release.  DAP WAIT is a screening assignment because an

eligibility interview for residential drug participation has been completed, and the inmate is being monitored for program placement.

9.2.2.  <u>Participation Assignments</u>.  A participation assignment is used to document that an inmate has formally entered a particular program (e.g. NR PART, DAP PART, etc..).  Staff should enter the DRG participation date consistent with the day the inmate actually begins formal participation in the drug program. Staff shall not enter a participation date before a program activity officially begins.

9.2.3.  <u>Termination Assignments</u>.  A termination assignment is used to document that an inmate has ended participation in a particular program.  Whenever an inmate participates in a program with a cohort of inmates, a termination assignment must be entered to document the end of participation with that specific cohort. Additionally, the SENTRY termination assignment date must reflect the day the inmate formally ends participation in a program. There are four ways that an inmate may end enrollment in a program. They are defined as follows:

■ <u>Completion</u> - the inmate completes all requirements, standards, and/or treatment goals for the program.  The completion criteria may cover attendance, conduct, learning, and/or performance.

■ <u>Withdrawal</u> - the inmate fails to complete all requirements, standards, or goals for the program because he/she has specifically requested and staff have granted a release from the program.

■ <u>Expulsion</u> - the inmate fails to complete all requirements, standards, or goals for the program, and staff have removed the inmate from the program.  For example, an expulsion might occur if an inmate has a pattern of disruptive behavior in group sessions.

One circumstance requires additional clarification.  When an inmate is found guilty of an incident report unrelated to drug program participation, but misses a significant number of program sessions due to confinement in Special Housing, staff should classify the termination assignment as an expulsion, not an incomplete.  The reason is the inmate had control over the behavior which led to a failure in meeting an attendance requirement.

■ <u>Incomplete</u> - the inmate fails to complete all requirements, standards, or goals for the program despite intentions to complete the program if time permits.  This assignment is necessary when the inmate's participation is interrupted.  Examples might include interruptions due to

writ, medical problems, protective custody, and release to a
CCC or the community, etc.

9.3  <u>SENTRY Transactions</u>.  The SENTRY transaction, UPDATE INMATE
ASSIGNMENT, is the means to enter and change all DRG category
assignments for inmates.  SENTRY only allows three functions to be
used with DRG assignments:

- Adding (ADD) a valid code from the Category table;
- Replacing (REP) a valid code from the Category table; and
- Deleting (DEL) a valid code from the Category table.

SENTRY allows a maximum of seven current DRG assignments at any
time.  Therefore, the choice of adding, replacing, or deleting an
assignment is important to the SENTRY database and record for the
inmate.

9.4  <u>Initial Screening</u>. The DAP Coordinator shall monitor the
following four screening DRG I assignments:

| Assignment | Group Code | Description |
|---|---|---|
| DRG I RQ V | IR | DRG INTRV REQD: VIOLATION |
| DRG I RQ J | IR | DRG INTRV REQD: JUD RECOMMEND |
| DRG I RQ C | IR | DRG INTRV REQD: CONTRB TO OFF |
| DRG I NONE | IN | NO DRUG INTERVIEW REQUIRED |

Unit staff shall determine whether an inmate meets any of the
criteria for Required Drug Abuse Education and enter the
appropriate DRG I assignment within 30 days of the inmate's
arrival at his or her initially designated institution (see
Chapter Two for exceptions).  Unit staff shall also conduct a new
review for inmates returned as failures in a community-based
program, and enter the appropriate DRG I assignment based on this
updated review.  In this situation, inmates who receive a new
DRG I RQ assignment upon return to an institution must repeat drug
education.

Unit team staff completion of a hard copy of the Drug Use
Review/Referral Form (DURRF) is no longer required.  Unit team
staff are now required to review the inmate central file
documentation, apply the criteria described in Attachment A, and
enter one of the four DRG I assignments directly into SENTRY.
Once entered, a DRG I assignment must always be a current SENTRY
DRG assignment while the inmate is in Bureau custody (see section
9.9 for further information).

  9.4.1  <u>Assignments for Required Drug Abuse Education</u>. The seven
DRG assignments for required drug abuse education area are:

| Assignment | Group Code | Description |
|---|---|---|
| ED EXEM | EE | DRUG EDUCATION EXEMPT |
| ED WAIT R | EW | DRUG EDUCATION WAIT-REQUIRED |
| ED DECL R | ED | DRUG EDUCATION DECLINE-REQ |
| ED PART R | EP | DRUG EDUCATION PARTICIPATION-REQ |
| DRG E COMP | EC | DRUG EDUCATION COMPLETED |
| ED INCOM R | EI | DRUG EDUCATION INCOMPLETE-REQ |
| ED FAIL R | EF | DRUG EDUCATION FAIL-REQUIRED |

■ ED EXEM - An inmate is exempted from the drug education participation requirement due to cognitive impairment or because of an agreement to participate in residential treatment.

■ ED WAIT R - An inmate is placed on a waiting list because he or she has agreed to participate in Drug Abuse Education.
■ ED DECL R - An inmate has declined to participate in drug abuse education even though required to do so. This assignment shall be entered to document refusals prior to participation in drug abuse education.  This assignment is not appropriate for any inmate who formally begins drug abuse education, and then refuses to continue (see "ED FAIL R").

■ ED PART R - An inmate begins participation in drug abuse education.  Staff shall replace ED WAIT R with ED PART R, whereby it must remain a current assignment until the inmate ends participation.  When participation ends, the ED PART R assignment should be replaced by one of the following three termination assignments for this program area.

■ DRG E COMP - An inmate successfully completes all requirements of the drug abuse education program.

■ ED INCOM R - An inmate does not complete all requirements of the drug abuse education program for reasons beyond his or her control.

■ ED FAIL R - An inmate does not complete the drug abuse education program, but withdraws or is expelled.

9.4.2  Assignments for Voluntary Drug Abuse Education. In some cases inmates volunteer for drug abuse education.  The six DRG assignments for voluntary drug abuse education are:

| Assignment | Group Code | Description |
|---|---|---|
| ED WAIT V | EW | DRUG EDUCATION WAIT-VOLUNTEER |
| ED DECL V | ED | DRUG EDUCATION DECLINE-VOL |
| ED PART V | EP | DRUG EDUCATION PARTICIPATION-VOL |
| DRG E COMP | EC | DRUG EDUCATION COMPLETED |
| ED INCOM V | EI | DRUG EDUCATION INCOMPLETE-VOL |
| ED FAIL V | EF | DRUG EDUCATION FAIL-VOLUNTEER |

■ ED WAIT V - An inmate volunteers for the drug abuse education program but is not required to do so.  This assignment indicates the inmate is on a waiting list for the drug abuse education program.

■ ED DECL V - An inmate has declined to participate in drug abuse education prior to the actual start of participation. In this circumstance, ED DECL V:

  ■ shall replace ED WAIT V when the inmate has already been placed on the waiting list;

  ■ shall be added as a current assignment when staff recommend drug education to an inmate who has not already been placed on the waiting list.

  ■ cannot be used to indicate an inmate's decision to leave the program once it begins (see "ED FAIL V").

■ ED PART V - An inmate begins voluntary participation in Drug Abuse Education. The ED PART V assignment should replace ED WAIT V, and is a current assignment until the inmate ends participation. The ED PART V assignment must always be replaced by one of the following three termination assignments for this program area.

■ DRG E COMP - An inmate who volunteers for drug abuse education and successfully completes all requirements of the program.  DRG E COMP is used for both required and volunteer completions of drug education.

■ ED INCOM V - An inmate who volunteers for drug abuse education but does not complete all requirements of the drug abuse education course for reasons beyond their control.

■ ED FAIL V - An inmate who volunteers for drug abuse education but withdraws and/or requires expulsion.

9.5.  Assignments for Nonresidential Drug Abuse Counseling. There are only participation and termination assignments for non-residential drug abuse programming.  NR Assignments shall not be used to document involvement in Nonresidential Transitional Services, which is a distinct program area with separate

assignments (see Section 9.8).  The four non-residential drug abuse counseling assignments are:

| Assignment | Group Code | Description |
|---|---|---|
| NR PART | NP | NRES DRUG COUNSEL PARTICIPANT |
| NR COMP | NC | NRES DRUG TMT/COMPLETE |
| NR DIS | NI | NRES DRUG TMT/DISCONTINUED |
| NR FAIL | NF | NRES DRUG TMT/FAIL |

■ <u>NR PART</u> - An inmate formally begins participation in Nonresidential Drug Abuse Counseling. NR PART is an assignment that is added and retained as a current assignment until the inmate ends participation.  At completion, NR PART should be replaced by one of following three termination assignments.

■ <u>NR COMP</u> - An inmate who completes non-residential drug abuse counseling.

■ <u>NR DIS</u> - An inmate who does not complete non-residential drug abuse counseling for reasons beyond his or her control.

■ <u>NR FAIL</u> - An inmate who does not complete non-residential drug abuse counseling because he or she withdraws from the program or is expelled.

9.6  <u>Assignments for Review of Early Release Eligibility</u>.  Before an inmate enters a residential drug abuse program, staff must enter one of the following two early release assignments in SENTRY, ELIGIBLE or INELIGIBLE.  It is vital that staff maintain accurate assignments in this area.  ELIGIBLE or INELIGIBLE shall be added at the same time the inmate is placed on the waiting list.  Inmates with current assignments of DAP WAIT, DAP PART, DAP COMP, or DAP INCOMP shall always have a current assignment for provisional early release eligibility.  ELIGIBLE can be replaced by INELIGIBLE, and visa versa, in order to document changes in an inmate's early release status. There are only two DRG assignments related to the early release process:

| | Assignment | Group Code | Description |
|---|---|---|---|
| | ELIGIBLE | R | 18 USC 3621 RELEASE ELIGIBLE |
| * | INELIGIBLE | R | 18 USC 3621 RELEASE INELIGIBLE |

■ <u>ELIGIBLE</u> - An inmate who has been provisionally determined eligible for early release under 18 U.S.C. § 3621(e).  Then, staff shall add ELIGIBLE as a current assignment.          *

■ <u>INELIGIBLE</u> - An inmate who has been determined ineligible
for early release under 18 U.S.C. § 3621(e).  Then, staff
shall add INELIGIBLE as a current assignment.

9.7  <u>Assignments for Residential Drug Abuse Treatment</u>.  Residential
drug abuse treatment is a program area where documentation of an
inmate's movement is critical, particularly for tracking purposes.
There are ten assignments in this area:

|  | Assignment | Group Code | Description |
|--|-----------|-----------|-------------|
|  | DAP UNQUAL | DU | RESIDENT DRUG TRMT UNQUALIFIED |
|  | DAP WAIT | DW | RESIDENT DRUG TRMT WAITING |
|  | DAP DECL | DD | RESIDENT DRUG TRMT DECLINED |
|  | DAP PART | DP | RESIDENT DRUG TRMT PARTICIPANT |
|  | IRT | NT | INTENSIVE REFRESHER TREATMENT |
|  | DAP COMP | DC | RES DRUG TRMT COMP/TRANS REQD |
|  | DAP INCOMP | DI | RESIDENT DRUG TRMT INCOMPLETE |
|  | DAP FAIL W | DF | RESIDENT DRUG TRMT FAIL-WITHDR |
|  | DAP FAIL E | DF | RESIDENT DRUG TRMT FAIL-EXPEL |
|  | DAP FAIL O | DF | RESIDENT DRUG TRMT FAIL-OUTCOM |

9.7.1.  <u>Screening Residential Drug Program Assignments</u>.  When an
inmate applies for residential drug abuse treatment, staff conduct
an evaluation to determine whether the inmate meets the admission
criteria.  There are four possible outcomes to this evaluation of
eligibility for treatment, which are documented in SENTRY as
follows:

■ <u>DAP UNQUAL</u> - An inmate who requests participation in a
residential drug program but does not meet one or more of the
admissions' criteria.  Then, staff shall add DAP UNQUAL.
This assignment shall remain active until there is a change
in status (i.e, documentation received supporting a
diagnosis), and the inmate then meets the admissions'
criteria.

■ <u>DAP WAIT</u> - An inmate who meets all the admissions'
criteria and needs placement on the waiting list pending
formal participation in the unit-based portion of residential
treatment shall have this assignment added (<u>Note</u>: the
appropriate ELIGIBLE/INELIGIBLE assignment shall be added
concurrently).

■ <u>DAP DECL</u> - An inmate who declines to participate in the
residential program prior to the actual start of
participation shall have this assignment added.  Four
guidelines apply:

■ When an inmate has applied for residential treatment, and has not yet been evaluated for treatment eligibility, but withdraws his/her application, then staff are to add DAP DECL.

■ When an inmate has been deemed eligible for residential treatment and has been placed on DAP WAIT, and the inmate subsequently declines the program, staff should replace DAP WAIT with DAP DECL.

■ After an inmate begins participation in residential treatment, DAP DECL should not be used when an inmate decides to leave the program (see "DAP FAIL W").

■ When an inmate has been determined ineligible for residential treatment and subsequently withdraws the application, staff should simply retain DAP UNQUAL as the correct assignment.

9.7.2. <u>Participation/Termination Residential Program Assignments</u>

■ <u>DAP PART</u> - An inmate who begins participation in a residential drug abuse treatment program. Additional guidelines apply, which follow:

■ The DAP PART assignment shall replace DAP WAIT and shall remain a current assignment until the inmate ends participation in the residential program;

■ DAP PART shall not be entered until the inmate is housed in the separate drug treatment unit;

■ The DAP PART assignment shall be replaced by one of the termination assignments below when the inmate ends participation in the program.

■ <u>DAP COMP</u> - An inmate who successfully completes a residential drug abuse program.

- <u>DAP INCOMP</u> - An inmate who does not complete the residential drug abuse program for reasons beyond his or her control.

- <u>DAP FAIL W</u> - An inmate who does not complete the residential drug abuse program because he or she withdraws from the program.

- <u>DAP FAIL E</u> - An inmate who does not complete the residential drug abuse program because of behavior requiring expulsion.

■ <u>DAP FAIL O</u> - An inmate who completes the unit-based residential drug abuse program but fails the program at a later stage. There are three time periods that an inmate can fail after completion of the unit-based portion of the residential program:

■ An inmate can fail in non-residential transitional services. When this occurs, NR TS PART shall be replaced by NR TS FAIL and DAP COMP shall be replaced by DAP FAIL O. If applicable, ELIGIBLE shall be replaced by INELIGIBLE.

■ An inmate can fail in the time period after non-residential transitional services, but before release from Bureau custody or transfer to a community-based program. When an inmate is found guilty of the serious disciplinary activity identified in Chapter 5, then DAP FAIL O shall replace DAP COMP, and if applicable, ELIGIBLE should replace INELIGIBLE.

■ An inmate can fail during the course of community transitional services. In this circumstance, community corrections staff shall replace TRAN PAR R with TRANS FAIL, replace DAP COMP with DAP FAIL O, and if applicable, ELIGIBLE with INELIGIBLE.

■ <u>IRT (Special Circumstance)</u> - Staff shall add the IRT assignment, instead of DAP PART, as the proper participation assignment for inmates that participated in residential treatment prior to October 1, 1989. This is for inmates who wish to supplement their previous treatment to make it equivalent to recent Bureau residential programs (see Chapter 6). The IRT assignment shall then be followed by the appropriate termination assignment identified above.

9.8 <u>Assignments for Nonresidential Transitional Services</u>. Non-residential transitional services is limited to inmates who have completed the unit-based portion of the residential drug program.

There are only four assignments in this area:

| Assignment | Group Code | Description |
|---|---|---|
| NR TS PART | NP | NRES DRUG TMT/TS PARTICIPANT |
| NR TS COMP | NC | NRES DRUG TMT/TS COMPLETE |
| NR TS INCM | NI | NRES DRUG TMT/TS INCOMPLETE |
| NR TS FAIL | NF | NRES DRUG TMT/TS FAILURE |

■ <u>NR TS PART</u> - An inmate who completes the unit-based segment of the residential phase of treatment shall immediately begin Non-residential Transitional Services. Staff shall promptly add this assignment. It does <u>not</u>

replace DAP COMP, and should be retained as a current
assignment until the inmate ends participation.  The
following are the three termination assignments in this
program area:

■ <u>NR TS COMP</u> - An inmate who completes non-
residentialtransitional drug abuse programming.  This assignment
should be entered only if the inmate has participated in the
program for the required 12 months.  There is one exception. If
the inmate cannot participate in the required 12 months because of
a scheduled transfer to a community-based program or release, NR
TS COMP should be entered in SENTRY when the inmate is within
seven days from the furlough transfer date or release.

■ <u>NR TS INCM</u> - An inmate who does not complete non-
residential transition drug abuse programming for reasons
beyond his or her control.

■ <u>NR TS FAIL</u> - An inmate who is required to complete the
non-residential transitional program but does not do so
because he or she withdraws from the program or is expelled.
9.9  <u>Assignments for Intensive Confinement Center Treatment</u>.  ICC
staff are to enter this assignment to alert Community Corrections
staff when an inmate requires transitional drug abuse treatment
services after release from an ICC.

There is only one assignment in this area:

| Assignment | Group Code | Description |
|---|---|---|
| ICC DRUG | C | ICC DRUG TREATMENT REQUIRED |

9.10  <u>Assignments for Transitional Services in the Community</u>.
Community Corrections staff are responsible for entering and
updating all community transitional services assignments, not
institutional DAP staff.  The six DRG assignments in this area
include:

| Assignment | Group Code | Description |
|---|---|---|
| TRAN PAR R | TP | COMMUNITY TRAN SERV PARTIC-REQ |
| TRAN PAR V | TP | COMMUNITY TRAN SERV PARTIC-VOL |
| TRANS COMP | TC | DRUG TRANS SERVICES COMPLETED |
| TRANS REMV | TF | DRUG TRANS SERVIC OTHR REMOVAL |
| TRANS FAIL | TF | DRUG TRANS SERVICES FAILURE |
| TRANS DECL | TD | DRUG TRANS SERVICES DECLINE |

■ <u>TRAN PAR R</u> - Inmates who are required to participate in,
and are enrolled in community transitional services shall

have this assignment added.  It remains a current assignment
until the inmate ends participation.

■ <u>TRAN PAR V</u> - Inmates who volunteer to participate in, and
are enrolled in community transitional services shall have
this assignment added.  It remains a current assignment until
the inmate ends participation.

■ <u>TRANS COMP</u> - An inmate who completes community
transitional programming either as a volunteer or as a
requirement.  TRANS COMP replaces either TRAN PAR V or TRAN
PAR R.

■ <u>TRANS REMV</u> - An inmate who is required, or who volunteers
to participate in community transitional services and does
not complete the program for reasons beyond his or her
control.

■ <u>TRANS FAIL</u> - An inmate who is required to participate in
community transitional services and does not complete the
program because he or she withdraws or is expelled.

■ <u>TRANS DECL</u> - An inmate who volunteers to participate in
community transitional services and does not complete the
program because he or she withdraws or is expelled.

CCM staff are to ensure that TRANS COMP is entered in SENTRY
before an inmate releases via the 3621(e) mechanism.

9.11  <u>Comprehensive Removal of SENTRY DRG Assignments</u>.  Current
DRG assignments provide a snapshot of an inmate's active status in
drug abuse programs.  There are two occasions when deletion (DEL)
of all current assignments is necessary. These two circumstances
are when:

■ the inmate fails while in a community-based program; or
■ the inmate is permanently released from Bureau custody.

However, before deleting all current DRG assignments, staff must
assure that all participation assignments are replaced by accurate
termination assignments so that an accurate record of the inmate's
drug programming history is maintained over time.

When an inmate fails a CCC placement, community corrections staff
shall make proper replacements of current DRG assignments and then
delete all current DRG assignments prior to the inmate's return to
an institution (i.e. replace TRAN PAR R by TRANS FAIL, and then
delete all current assignments).  CCM staff shall also replace any
DAP COMP assignment by DAP FAIL O, and if applicable, replace
ELIGIBLE with INELIGIBLE when an inmate fails the community
transitional program.

Inmates are released from Bureau custody in one of three ways:

- release from an institution to the community,
- release from an institution to a detainer, or
- release from a CCC to the community.

When any of these three types of releases occurs, SENTRY will automatically delete all current DRG assignments. In the first two circumstances, institutional staff are responsible for making needed replacements of current DRG assignments before this automated deletion occurs. In the latter case, community corrections staff are responsible for replacements before automated deletion of SENTRY DRG assignments.

9.12  Other Documentation Requirements. This section describes how DAP staff are to handle testing of inmates, and provides specific restrictions to ensure that test materials are not compromised and that confidentiality of inmate testing records is maintained.

  9.12.1  Test Accountability. An accountability system is vital to the valid administration, interpretation and use of drug abuse program testing. The Drug Abuse Treatment Program Coordinator shall ensure that a test accountability and inventory system is established to ensure:

- Test materials are not abused, misplaced or stolen;

- Official tests, answer sheets, and other relevant testing materials shall be stored in a fire-proof safe to prevent any test security breach;

- A quarterly inventory is conducted to account for all official test material;

- The suspicion or occurrence of test compromises shall be immediately reported via telephonic contact and in writing to the respective Regional Drug Abuse Program Coordinator. If a breach in test security has occurred, the Regional Drug Abuse Coordinator shall notify the Central Office National Drug Abuse Program Coordinator or designee; and

- Completed answer sheets with a version of the test given shall be filed chronologically and stored in a secure, fire-proof safe.

  9.12.2  Test Administration. Only the Drug Abuse Treatment Coordinator and/or designated staff shall administer or handle test material. During test administration, staff must be present at the testing site until all test and answer sheets have been returned. Inmates are not permitted, under any circumstances, to engage in test administration, interpretation, or clerical handling of test materials.

PS 5330.10

When the Drug Abuse Treatment Coordinator delegates testing of either an individual or group, the Coordinator shall ensure that adequate training and supervision are provided.  This training must address instructions for test administrators to develop proper rapport; give correct instructions; and adequately answer reasonable questions raised by inmates.  In addition, when testing is conducted by staff other than Psychology Services staff, the Drug Abuse Program Coordinator is expected to monitor test administration procedures and operations.

Drug abuse treatment staff are to record test scores, both residential and drug education in PDS.  This is in addition to storing both the tests and answer sheets in a secure, fire-proof cabinet.

The Chief Psychologist is responsible for the above procedures when there is no Designated Drug Abuse Program Coordinator in an Institution.  When there is no Drug Abuse Program Coordinator or Chief Psychologist, the Warden shall consult with the Regional Drug Abuse Treatment Coordinator, if necessary, to designate a staff member to assure that the above procedures are followed.

9.12.3  <u>Confidentiality of Test Data</u>.  Staff shall assure the security and confidentiality of test materials.  Staff shall not provide inmates with personal copies of test items, instructions, answer sheets, or raw responses.  Test Material include drug abuse education tests, residential module tests, all commercially published tests, and other assessment instruments specified by the DAP Coordinator (e.g., eligibility interview, treatment planning interview).  Staff shall inform inmates about their tests, either verbally or by a summary report, but not by providing copies of raw data.

9.12.4  <u>Drug Abuse Education Records</u>.  Drug Abuse Education records and documents generated shall be organized and filed in the following manner.  The Agreement to Participate in Drug Abuse Education, Certificate of Completion, and Attachment C (Change in Status) must be filed in section 4 of the inmate central file.  A copy of each of the above documents, attendance records, test answer sheets, and similar material shall be stored in a folder for each specific drug education cohort.  Psychology Services Department staff should maintain these folders at all times.

9.12.5  <u>PDS Requirements</u>.  PDS is a computerized treatment documentation and data management system used by Psychology Services.  Drug abuse treatment staff, as members of the Psychology Services department, are required to use PDS to document treatment contacts and progress.  Management staff can use PDS data for program monitoring and planning purposes.

Using PDS, psychologists also identify drug abuse treatment needs, substance abuse diagnoses, and other pertinent information at the initial psychological screening stage. Drug treatment staff should use a variety of reports generated through PDS to identify those in need of treatment.

The Drug Abuse Treatment Coordinator shall ensure that all drug abuse treatment staff use the PDS to document the following:

    (1)  individual treatment enrollments and completions;
    (2)  group treatment enrollments and completions; and
    (3)  individual treatment plans/progress reviews, goals and objectives.

Signed treatment plans and raw test data should be kept separately in a "hard copy" file the Drug Abuse Treatment Coordinator maintains. (See below and the Program Statement, Psychology Services Manual, for procedures regarding the handling and maintenance of clinical records).

9.12.6 <u>Paper Documents</u>. The Drug Abuse Treatment Coordinator is to maintain the following in "hard copy" files, if applicable:

    (1)  Signed Agreement to Participate forms (BP-S550.053);
\*     (2)  Copies of memoranda/attachments regarding drug abuse treatment program status (Attachments C, H, J, K, N, and O);     \*
    (3)  Treatment Summary and Referral Form (BP-S549.053);
    (4)  Copies of Certificate(s) of Completion;
    (5)  Signed treatment plans, goals and objectives;
    (6)  Test/assessment data; and
    (7)  Copies of the Residential Drug Abuse Treatment Program Eligibility and Treatment Planning Interviews.

9.12.7 <u>Inmate Central File</u>. The following shall be forwarded and maintained in the inmate central file as he/she progresses through various drug abuse programs if applicable:

    (1)  BP-S550.053 -  Copy of signed Agreement to Participate form; See Attachment B for sample;
    (2)  Attachment C - Memoranda regarding changes in drug abuse treatment program status (originals);
    (3)  BP-S549.053 -  Copy of completed Treatment Summary & Referral Form (see Attachment D for sample);
    (4)  Copies of Certificate(s) of Completion;
    (5)  Attachment E - Request for Aftercare Stipulation and accompanying Waiver (BP-S544.053) (original) (see Attachment F for sample);

```
*    (6)   Attachment H - Notification of Provisional
                          Determination for 18 U.S.C. § 3621(e)
                          Sentence Reduction;
     (7)   Attachment J - Notice of Residential Drug Program
                          Qualification and Provisional 3621(e)
                          Eligibility;
     (8)   Attachment K - Final Review of Inmate's Provisional
                          Early Release;
     (9)   Attachment N - Notification of Instant Offense
                          Determination; and
     (10)  Attachment O - Request to Delay Provisional § 3621(e)
                          Release Date.                          *
```

**ATTACHMENT    A**
**INSTRUCTIONS FOR DETERMINING A "DRG I" ASSIGNMENT**

Unit staff are to review the central file and enter an appropriate "DRG I" assignment in SENTRY for every inmate. This procedure determines the inmate's status for required Drug Abuse Education and informs other staff about the result. The file review and entry of a "DRG I" assignment should be accomplished within 30 days of an inmate's arrival at the institution when:

   (1)     the inmate arrives at his/her <u>first</u> designated institution after sentencing, or

   (2)     the inmate is <u>returned</u> to an institution after a CCC failure or supervision failure.

In either of these two situations, if there is already a "DRG I" assignment for the inmate in SENTRY, the assignment should be replaced by a new "DRG I" assignment based on a new review of the central file and application of the procedures below.

With the issuance of Change Notice CN-02 to PS 5330.10, the use of the Drug Use Review/Referral Form (DURRF) is no longer required. A "DRG I" assignment can be directly added to SENTRY after an appropriate review of the inmate central file and use of the instructions listed below.

Answer the following questions about the inmate under review and enter the proper SENTRY "DRG I" assignment based on those answers.

   (1)    Was the inmate newly sentenced or did he/she have a release revoked after September 30, 1991?

      ■  If the answer is "NO", then add "DRG I NONE" to SENTRY and stop here.

      ■  If the answer is "YES", then go to the next question.

   (2)    According to official documents in the central file or as indicated on SENTRY, was alcohol or drug use one of the reasons for a violation of supervised release, parole, or BOP community status (CCC placement) for which the inmate is now incarcerated?

      ■  If the answer is "NO", then go to the next question.

      ■  If the answer is "YES", then add "DRG I RQ V" to SENTRY and stop here.

    (3)      According to the J&C or other documents from the judge in this case, did the judge recommend institutional drug treatment for this inmate?

- If the answer is "NO", then go to the next question.
- If the answer is "YES", then add "DRG I RQ J" to SENTRY and stop here.

    (4)      Is there evidence in the Presentence Investigation that alcohol or other drug use contributed to the commission of the instant offense?  (See NOTE for explanation.)

- If the answer is "NO", then add "DRG I NONE" to SENTRY and stop.
- If the answer is "YES", then add "DRG I RQ C" to SENTRY and stop.

<u>NOTE</u>:  Answering question #4 depends upon an inference by the reviewer, and therefore good judgment must be exercised.  The evidence of a connection between substance use and the crime will vary from case to case.  For example, the subject may have freely reported that he/she was intoxicated at the time of the offense or that he/she committed the offense in order to get alcohol/drugs for his/her own use.

In other cases, the evidence may be more indirect.  For example, a connection could be inferred for an inmate who had robbed banks, who had no steady employment, and for whom drug paraphernalia had been found at his/her place of residence.  The crimes of drug possession and distribution by themselves are not sufficient evidence of drug use.

AGREEMENT TO PARTICIPATE IN THE BUREAU OF PRISONS DRUG EDUCATION COURSE

The Federal Bureau of Prisons offers a full range of drug education and treatment programs for inmates with alcohol and other drug abuse problems. Bureau of Prisons Staff commit to providing quality drug abuse programming to inmates who choose to participate in any one of these program options. Inmates who choose to participate in any of the Bureau's drug programs must acknowledge and agree to a number of program rules and policies prior to admission.

All program participants agree to participate in classes/counseling/group sessions as designated by the BOP Psychology and Drug Treatment Staff.

All program participants agree to refrain from any behavior disruptive to the program or to the participants and staff of the program.

All program participants agree to complete all tasks as assigned.

All program participants agree to take part in the program activities, including group work and homework as assigned.

All program participants agree to accept responsibility for not disclosing inmate information.

All program participants have been informed and understand that they may be expelled from the program for failure to comply with program rules and regulations. Ordinarily, immediate expulsion will result if the participant, pursuant to an incident report is found by the DHO to have: 1) Used or possessed alcohol or drugs; 2) Been violent or threatened violence against staff or another inmate; or 3) committed a 100 series prohibited act.

In addition to the agreements listed above, I understand that if I am required to participate in drug education, and then if I withdraw, am expelled, or fail to meet the program requirements, I will be restricted to the lowest pay grade while in the institution and I will be prohibited from participation in community programs unless or until I complete the Drug Education Course.

I understand and consent to the release of information specified below by Bureau of Prisons staff to the appropriate U.S. Probation staff, Community Corrections Staff, and Treatment Program Staff for the purpose of developing a treatment plan.

**The extent and nature of the information to be disclosed includes:  substance abuse history; drug program assessment summary; treatment progress; relapse prevention plan; and recommendations for continued treatment.**
                    **AGREEMENT/SIGNATURE**

**I have read, or have had this document read to me, and I understand and agree to  the rules and regulations for participation in the treatment option(s) I have initialled in the box(es) above.**


_____    _____
Inmate Name Printed          Staff Name Printed


_____    _____
Inmate Signature             Staff Signature


_____    _____
Register Number              Staff Title


_____    _____
Date                         Date


(END FORM)

(This form may be replicated via WP)

AGREEMENT TO PARTICIPATE IN THE BUREAU OF PRISONS NON-RESIDENTIAL
DRUG ABUSE TREATMENT SERVICES

Initial the line below for the appropriate non-resident service

Non-residential treatment          _____

Non-residential transition         _____

Non-residential refresher          _____

The Federal Bureau of Prisons offers a full range of drug
education and treatment programs for inmates with alcohol and
other drug abuse problems.  Bureau of Prisons Staff commit to
providing quality drug abuse programming to inmates who choose to
participate in any one of these program options.  Inmates who
choose to participate in any of the Bureau's drug programs must
acknowledge and agree to a number of program rules and policies
prior to admission.

All program participants agree to participate in
classes/counseling/group sessions as designated by the BOP
Psychology and Drug Treatment Staff.

All program participants agree to refrain from any behavior
disruptive to the program or to the participants and staff of the
program.

All program participants agree to complete all tasks as assigned.

All program participants agree to take part in the program
activities, including group work and homework as assigned.

All program participants agree to accept responsibility for not
disclosing inmate information.

All program participants have been informed and understand that
they may be expelled from the program for failure to comply with
program rules and regulations.  Ordinarily, immediate expulsion
will result if the participant, pursuant to an incident report is
found by the DHO to have:
    1)  Used or possessed alcohol or drugs;
    2)  Been violent or threatened violence against staff or
another   inmate; or
    3)  committed a 100 series prohibited act.

In addition to the agreements listed and checked above, I
understand that as a participant in non-residential drug
treatment, I may be required to participate in continued

treatment upon referral to a Community Corrections Center.  At
that time, should I agree to participate in continued treatment,
I agree to the release of information, specified below by, Bureau
of Prisons staff.

**I understand and consent to the release of information specified
below by Bureau of Prisons staff to the appropriate U.S.
Probation staff, Community Corrections Staff, and Treatment
Program Staff for the purpose of developing a continuing
treatment plan.**

**The extent and nature of the information to be disclosed
includes:  substance abuse history; drug program assessment
summary; treatment progress; relapse prevention plan; and
recommendations for continued treatment.**

### AGREEMENT/SIGNATURE

**I have read, or have had this document read to me, and I
understand and agree to  the rules and regulations for
participation in the treatment option(s) I have initialled in the
box(es) above.**


_____          _____
Inmate Name Printed                          Staff Name Printed


_____          _____
Inmate Signature                             Staff Signature


_____          _____
Register Number                              Staff Title


_____          _____
Date                                         Date

               AGREEMENT TO PARTICIPATE IN A BOP RESIDENTIAL
                       DRUG ABUSE TREATMENT PROGRAM

The Federal Bureau of Prisons offers a full range of drug
education and treatment programs for inmates with alcohol and
other drug abuse problems.  Bureau of Prisons staff are committed
to providing quality drug abuse programming to inmates who choose
to participate in any one of these program options.  Inmates who
choose to participate in any of the Bureau's drug programs must
acknowledge and agree to a number of program rules and policies
prior to admission.

All program participants agree to participate in
classes/counseling/group sessions as designated by the BOP
Psychology and Drug Treatment Staff.

All program participants agree to refrain from any behavior
disruptive to the program or to the participants and staff of the
program.

All program participants agree to complete all tasks as assigned.

All program participants agree to take part in the program
activities, including group work and homework as assigned.

All program participants agree to accept responsibility for not
disclosing inmate information.

All program participants have been informed and understand that
they may be expelled from the program for failure to comply with
program rules and regulations.  Ordinarily, immediate expulsion
will result if the participant, pursuant to an incident report is
found by the DHO to have:

     1)   Used or possessed alcohol or drugs;

     2)   Been violent or threatened violence against staff or
          another inmate; or

     3)   Committed a 100 series prohibited act.

     4)   Committed a prohibited act involving alcohol or drugs
          after completing the unit-based segment of the program.

In addition to the agreements listed and checked above, I
understand that, by agreeing to participate in residential drug
abuse treatment, under ordinary circumstances, I will not be
considered for transfer to another institution, including a camp,
during my participation in the residential drug abuse program.
I understand that participation in the residential drug abuse
program does not relieve me of any financial responsibility
legally imposed.

I understand that some of my counseling sessions may be audio/video taped.  I understand these tapes will be used only for rehabilitative or educational purposes within the program. I understand that I will continue to be subjected to random drug abuse testing.

I understand that if I choose to withdraw, or am expelled from the program:

♦   incentives received while an active program member may be lost;

♦   any request for re-admission will include a reassessment for participation;

♦   there will be no consideration for extended CCC placement; and

♦   I will lose my eligibility for an early release  consideration.

I understand and agree to continued transitional drug treatment services that include:

♦   continued positive behavior and treatment programming upon my return to general population.  Failure to participate in continued treatment in the institution transition program, as prescribed by psychology staff, for less than one hour each month over a period of 12 months will result in my termination from treatment and loss of incentives previously and potentially earned;

♦   continued treatment programming upon my return to the community through transfer to a CCC or on home confinement. Failure to participate in continued treatment in the community transition program may result in my return to the institution, or, at the very least, to local custody; and

I understand that I must be responsible for:

♦   knowing the rules, goals and schedules of my particular treatment plan;

*   ♦   attending all scheduled sessions that are assigned to me. Should I leave prior to the conclusion of the session, without permission, this is to be considered an absence;   *

♦   completing all assignments on time;

*   ♦   actively participating in group sessions.  Examples of active participation include, appropriate self-disclosure, and providing feedback;   *

♦  working on the goals/objectives of my treatment plan;

♦  being attentive during all individual and group sessions;

♦  keeping all information discussed in group confidential;

♦  following the Bureau of Prisons rules and regulations.  When
   I incur an incident report because I have failed to follow
   rules and regulations, I can be expelled from the program.

♦  _____

♦  _____


I understand that staff may recommend, as a condition of my
supervised release or parole, a stipulation that I receive
continued treatment during the period of such release.

*   I understand that if I have been found eligible for an early
    release under 18 U.S.C. §3621(e), this eligibility is
    provisional, and may change.                                    *

I understand and consent to the release of information specified
below by Bureau of Prisons staff to the appropriate U.S. Parole
Commission staff, U.S. Probation staff, Community Corrections
Staff, and Treatment Program Staff for the purpose of determining
my eligibility for a SPA or for developing a treatment plan.

The extent and nature of the information to be disclosed
includes:  substance abuse history; drug program assessment
summary; treatment progress; relapse prevention plan; and
recommendations for continued treatment.

### AGREEMENT/SIGNATURE

**I have read, or have had this document read to me, and I**
**understand and agree to the rules and regulations for**
*   **participation in the residential drug abuse treatment program as**
    **described in this agreement to participate.**                 *


_____    _____
Inmate Name Printed                 Staff Name Printed


_____    _____
Inmate Signature                    Staff Signature


_____    _____
Register Number                     Staff Title


_____    _____
Date                                Date

AGREEMENT TO PARTICIPATE IN COMMUNITY TRANSITION PROGRAMMING

The Federal Bureau of Prisons offers a full range of drug
education and treatment programs for inmates with alcohol and
other drug abuse problems.  Bureau of Prisons Staff commit to
providing quality drug abuse programming to inmates who choose to
participate in any one of these program options.  Inmates who
choose to participate in any of the Bureau's drug programs must
acknowledge and agree to a number of program rules and policies
prior to admission.

All program participants agree to participate in
classes/counseling/group sessions as designated by the BOP
Psychology and Drug Treatment Staff and Community Corrections
Staff.

All program participants agree to refrain from any behavior
disruptive to the program or to the participants and staff of the
program.

All program participants agree to complete all tasks as assigned.

All program participants agree to take part in the program
activities, including group work and homework as assigned.

All program participants agree to accept responsibility for not
disclosing inmate information.

All program participants have been informed and understand that
they may be expelled from the program for failure to comply with
program rules and regulations.  Immediate expulsion will result
if the participant, pursuant to an incident report is found by
the DHO to have:
    1)  Used or possessed alcohol or drugs;
    2)  Been violent or threatened violence against staff or
another  inmate; or
    3)  committed a 100 series prohibited act.

In addition to the agreements listed and checked above, I agree
to a number of program rules and policies prior to admission into
the Community Transition Drug Treatment program.

I agree to participate in individual/group/family/drug and/or
alcohol abuse counseling sessions as designated by the
Transitional Services Manager.

I agree to refrain from disruptive behavior in the CCC or with
other participants and to the treatment program or with
participants or staff.

I agree to complete all tasks assigned.  I agree to take part in
program activities, including group work and special assignments.

I understand that all personal information is kept confidential with the following exceptions:

a. program staff may release information when there is a risk of danger to the health and safety of inmates, staff, or other persons;

b. program staff may release information when there is a threat to the security or orderly running of the Community Corrections Center;

c. program staff may release information to the Regional Transitional Services Manager, Community Corrections Center staff, United States Probation, and/or other parties to whom release of information is deemed appropriate, in accordance with the information to be disclosed listed below.

I understand that expulsion from the program is considered a program failure and may result in my return to an institution.

I understand that expulsion from the program will result in my loss of consideration for a § 3621 release.

I understand that withdrawal from the program shall be deemed a program failure and may result in my return to an institution.

I understand and consent to the release of information specified below by Bureau of Prisons staff to the appropriate U.S. Probation staff, Community Corrections Staff, and Treatment Program Staff for the purpose of developing a treatment plan.

**The extent and nature of the information to be disclosed includes:  substance abuse history; drug program assessment summary; treatment progress; relapse prevention plan; and recommendations for continued treatment.**

### AGREEMENT/SIGNATURE

**I have read, or have had this document read to me, and I understand and agree to  the rules and regulations for participation in the treatment option(s) I have initialled in the box(es) above.**

_____          _____
Inmate Name Printed                      Staff Name Printed


_____          _____
Inmate Signature                         Staff Signature


_____          _____
Register Number                          Staff Title


_____          _____
Date                                     Date

CHANGE IN DRUG ABUSE TREATMENT PROGRAM STATUS MEMORANDUM

UNITED STATES GOVERNMENT MEMORANDUM

DATE:  ___/___/___

REPLY TO
ATTN OF:  _____
          Unit Manager/Drug Abuse Treatment Coordinator
          (see note below**)

SUBJECT:  CHANGE IN DRUG ABUSE TREATMENT PROGRAM STATUS

TO:  _____, _____ and
     UNIT MANAGER                    UNIT
     DAP COORDINATOR
     (see note below**)

TO:  _____ in cases of early release
                ISM            eligibility

_____, _____
          INMATE                          REGISTER #

previously agreed to, or is required to participate in:

____ Drug Education
____ Non-Residential Drug Abuse Treatment
____ Residential Drug Abuse Treatment
____ Transitional Services
____ Other:_____

Please note the following change in his/her program status:

____ He/she **declined/has withdrawn/was expelled/failed** (circle
     one) the program checked above.  His/her participation in
     the program was voluntary.

____ He/she **declined/has withdrawn/was expelled/failed** (circle
     one) the program checked above.  Program participation is
     mandatory for him/her. Please enforce the appropriate
     sanctions.

____ He/she **declined/has withdrawn/was expelled/failed** (circle
     one) the program checked above.  HE/SHE WAS ELIGIBLE FOR
     EARLY RELEASE CONSIDERATION.  Please remove his/her § 3621E
     projected release date.

CN-01, May 17, 1996
Attachment C, Page 2

____     He/she **is not eligible** for community transitional services.
         HE/SHE WAS ELIGIBLE FOR EARLY RELEASE CONSIDERATION. Please
         remove his/her § 3621E projected release date.

I have discussed this issue with the inmate and I have made the
appropriate SENTRY changes.


COMMENTS: (INCLUDE REASONS FOR EXPULSION OR FAILURE)

_____

_____

_____

_____

_____

_____

_____


_____     _____
Inmate Signature                      Date
(indicate if inmate refuses to sign)




original:  Unit Team (section 4 of the inmate's central file)
copies:    Warden
           Drug Abuse Treatment Coordinator
           Inmate

** When the inmate is participating in the unit-based residential
program, it is the DAP Coordinator's responsibility to forward
Attachment C to the ISM, through the Unit Team.  When the inmate
graduates from the unit-based residential program, it is the Unit
Manager's responsibility to forward Attachment C to the ISM, with
a copy to the DAP Coordinator and Warden.**

>>>THIS FORM AVAILABLE ON BOPDOCS<<<

BP-S549.053   **TREATMENT SUMMARY AND REFERRAL** CDFRM
NOV 94     **DRUG ABUSE TREATMENT PROGRAMS**
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

████████████████████████████████████████████████████████████

TO:       (check all that apply)
          _____   Community Corrections Manager
          _____   Transitional Services Manager
          _____   United States Probation Officer
          _____   Institutional Drug Abuse Treatment Coordinator
          _____   Community Treatment Provider

RE:       Name: _____

          Register No: _____


     Release Status:   (check only one)

          ___   BOP/General Population
          ___   BOP/CCC Placement
          ___   Supervised Release
          ___   Parole
          ___   No criminal justice hold


**TREATMENT SUMMARY NARRATIVE:**
**(Include course of treatment to date, initial and ongoing assessment
findings, response to treatment, progress in treatment, strengths and
weaknesses)**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(This form may be replicated via WP)
BP-S549.053    Page 2

RECOMMENDATIONS FOR FURTHER TREATMENT:

(Include or attach the inmate's relapse prevention plan)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Completed By:    _____
Title:           _____

Institution:     _____

Date:            _____/_____/_____

Coordinator's
Signature        _____

Date:            _____/_____/_____

(END FORM)

P.S. 5330.10
May 25, 1995
Attachment E , Page 1

REQUEST FOR AFTERCARE STIPULATION
FEDERAL BUREAU OF PRISONS


TO: _____

        Chief U.S. Probation Officer


FROM: _____

        Drug Abuse Treatment Coordinator, Bureau of Prisons


RE:          Acquisition of Treatment Condition


_____ is an inmate
currently housed at _____ and is
participating in the residential drug abuse treatment program at
this facility.

We ask that a special condition from the sentencing Judge be
acquired to stipulate treatment for this inmate upon release to
the community.

A treatment condition is important to assure that continuity of
treatment occurs as he/she progresses from the institution to the
community.  Enclosed is a waiver from the inmate documenting that
he/she has no objection to a drug abuse treatment aftercare
condition.

If we may be of any further assistance throughout this process,
please do not hesitate to contact us at your convenience.

P.S. 5330.10
May 25, 1995
Attachment F

**>>>THIS FORM AVAILABLE ON BOPDOCS<<<**

BP-S544.053 **WAIVER OF HEARING TO MODIFY COURT ORDER** CDFRM
NOV 94    **INSTITUTION DRUG ABUSE TREATMENT PROGRAMS**
**U.S. DEPARTMENT OF JUSTICE                      FEDERAL BUREAU OF PRISONS**
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

### UNITED STATES DISTRICT COURT

### DISTRICT OF _____

I have been advised and understand that I am entitled by law to a
hearing and assistance of counsel before any change may be made in my
Court Order.  By "assistance of counsel" I understand that I have the
right to be represented at the hearing by counsel.  I also understand
that I have the right to request the court to appoint counsel to
represent me at such a hearing at no cost to myself if I am not able
to retain counsel of my own choosing.

I hereby voluntarily waive my statutory right to a hearing and to
assistance of counsel.  I also agree to the following modification of
my Court Order:  The words "PARTICIPATE IN DRUG TREATMENT" be inserted
as a condition of my release status.

Witness: _____    Signed: _____
          Bureau of Prisons Staff                              Inmate

Date: _____    Date: _____

Agreed To: _____    Date: _____
           Chief U.S. Probation Officer

(This form may be replicated via WP)

P.S. 5330.10
May 25, 1995
Attachment G

**>>>THIS FORM AVAILABLE ON BOPDOCS<<<**

BP-S202.053    **AUTHORIZATION TO RELEASE CONFIDENTIAL INFORMATION**    CDFRM
APR 94    **INSTITUTION DRUG ABUSE TREATMENT PROGRAMS**
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**
████████████████████████████████████████████████████████████████████████

I, _____ , authorize _____
                (Inmate)                                    (Institution Name)

_____ to disclose to _____

_____
                              (Recipients)

_____

**all information reasonably necessary to accomplish the stated purpose
including sentencing data (BP-5), classification and progress reports,
medical, and psychiatric reports, and release plans.**
                              (Nature of information)

   Disclosure is to be made for the purpose of: _____

_____

_____

and my authorization is limited to the release of information relevant to
this stated purpose.

   I understand that my records are protected under the Federal
Confidentially Regulations and cannot be disclosed without my written
consent unless otherwise provided for in the regulations.  I also
understand that I may revoke this consent at any time except to the extent
that action has been taken in reliance on it.  In any event, this consent
will cease to be effective after my conditional release from the
institution.

_____                _____
        (Inmate Signature)                              (Witness Signature)

_____                _____
             (Date)                                          (Title)

Record Copy - Inmate Central File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-202(53) dated May 1978

PS 5330.10
CN-03 October 09, 1997
Attachment H, Page 1

FEDERAL BUREAU OF PRISONS

*

NOTIFICATION OF PROVISIONAL DETERMINATION FOR 18 U.S.C. § 3621(e) SENTENCE
REDUCTION
*

MEMORANDUM FOR: _____

ISM

THRU: _____    _____

WARDEN                                  DATE

SUBJECT: _____    _____

INMATE                                  REG. NO.

FROM: _____

DAP COORDINATOR

The above named inmate entered the unit-based segment of the residential
drug abuse treatment program on ___/___/___ date.  This inmate will
complete (has completed) the requirements of the unit-based segment of the
residential program on ___/___/___date.

* This memorandum serves to notify you of the inmate's admittance into the
unit-based component of the residential drug abuse treatment program and of
his/her provisional eligibility for a sentence reduction under 18 U.S.C. §
3621(e).

Please adjust the inmate's current projected release date to reflect a
provisional 18 U.S.C. § 3621(e) release date.  This adjusted § 3621(e) date
is provisional, and may change.                                          *

cc:  Unit Team

PS 5330.10
CN-03 October 09, 1996
Attachment J, Page 1

NOTICE OF RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION AND
PROVISIONAL § 3621(e) ELIGIBILITY

TO: _____      REG NO: _____

FROM: _____      INSTITUTION: _____

TITLE: _____      DATE: _____

## SECTION 1 – RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION

YOU HAVE REQUESTED PARTICIPATION IN THE BUREAU'S RESIDENTIAL DRUG*   ABUSE
TREATMENT PROGRAM.  MY REVIEW OF YOUR CASE INDICATES THAT YOU <u>DO/DO NOT</u>
MEET THE ADMISSION'S CRITERIA FOR THE RESIDENTIAL DRUG ABUSE PROGRAM.   IT
APPEARS THAT YOU <u>DO/DO NOT</u> QUALIFY TO PARTICIPATE IN THE RESIDENTIAL
PROGRAM.  (IF THE INMATE IS FOUND TO NOT QUALIFY, STATE THE REASON(S)
BELOW).
                                                                    *

Comments: _____

_____

_____

_____

_____

_____

_____

_____

PS 5330.10
CN-03 October 09, 1997
Attachment J, Page 2

**SECTION 2 – PROVISIONAL § 3621(E) ELIGIBILITY** – TO BE COMPLETED ONLY IF THE INMATE HAS COMPLETED OR QUALIFIES FOR THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM.

FOR RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM GRADUATES TO BE ELIGIBLE FOR EARLY RELEASE, THEY MUST (DAPC must initial):

___    NOT BE AN INS DETAINEE.

___    NOT BE A PRE-TRIAL INMATE.

___    NOT BE A CONTRACTUAL BOARDER.

___    NOT BE AN "OLD LAW" INMATE.

\*    ___    NOT HAVE A CURRENT CRIME THAT IS AN EXCLUDING OFFENSE IN BOP CATEGORIZATION OF OFFENSES POLICY (Mark an 'X' in the appropriate block below).

   ____    NOT A CRIME OF VIOLENCE AS CONTAINED IN BOP CATEGORIZATION OF OFFENSES POLICY.

   ____    NOT AN EXCLUDING CRIME BY THE DIRECTOR'S DISCRETION IN CATEGORIZATION OF OFFENSES POLICY

___    NOT HAVE ANY PRIOR FELONY OR MISDEMEANOR ADULT CONVICTION FOR HOMICIDE, FORCIBLE RAPE, ROBBERY, AGGRAVATED ASSAULT, OR SEXUAL ABUSE OF CHILDREN.

___    UNDERSTAND THAT NEARING THE TIME OF YOUR RELEASE, THE WARDEN WILL DETERMINE IF YOU ARE ELIGIBLE FOR TRANSFER TO A COMMUNITY-BASED PROGRAM.  IF YOU ARE NOT ELIGIBLE, YOU CANNOT COMPLETE THE COMMUNITY TRANSITIONAL SERVICES PORTION OF THE DRUG PROGRAM, AND THEREFORE, YOU MAY NOT RECEIVE A § 3621 (e) RELEASE.

MY CURRENT ASSESSMENT, IN CONSULTATION WITH YOUR UNIT TEAM, IS THAT IT _ DOES / DOES NOT   APPEAR THAT YOU ARE PROVISIONALLY ELIGIBLE FOR AN EARLY RELEASE.  IF NOT, LIST **ALL** THE REASON(S):

Comments:  _____

_____

**IF APPLICABLE, I UNDERSTAND THAT A DETERMINATION OF EARLY RELEASE FOR ME IS PROVISIONAL, MAY CHANGE, AND DEPENDS ON CONTINUED POSITIVE BEHAVIOR AND SUCCESSFUL PARTICIPATION IN ALL COMPONENTS OF THE PROGRAM, INCLUDING COMMUNITY TRANSITIONAL SERVICES.**    \*
INMATE'S SIGNATURE _____
(indicate if refused to sign)

cc: Drug Abuse Treatment File
  Unit Team (place in section 4 of inmate central file)

PS 5330.10
CN-03 October 09, 1997
Attachment K, Page 1

### FINAL REVIEW OF INMATE'S PROVISIONAL EARLY RELEASE

Inmate Name: _____    Reg No: _____

Institution: _____    Date: _____

Instructions:  Circle YES, NO, or N/A below.  If any answers are circled in the left hand column you may stop the review.  Any circles appearing in the left hand column indicate the inmate shall not receive a provisional early release.

|  | Indicates Ineligible | Indicates Eligible |
|---|---|---|
| 1. Does the inmate have any past adult convictions for homicide, aggravated assault, forcible rape, robbery or sexual abuse of children? | YES | NO |
| 2. Has the inmate successfully completed the unit-based component of the drug abuse program separated from the general population for a period no less than six months/180 days? (if inmate has a medical/physical disability and meets the exception criteria, circle yes.) | NO | YES |
| 3. Has the inmate participated in the institution transitional services program component of the drug abuse treatment program as appropriate? | NO | YES |
| 4. Is the inmate an INS Detainee? | YES | NO |
| 5. Is the inmate a pretrial inmate? | YES | NO |
| 6. Is the inmate a contractual boarder? (D.C., state, or military boarders in federal facilities) | YES | NO |
| 7. Is the inmate serving a sentence under 18 U.S.C. Chapter 227, "new law"? | NO | YES |

8. Is the inmate's current offense an excluding crime (If yes, mark an "X" in one of the three blocks)

|  |  |  |
|---|---|---|
| A. BOP Categorization of Offenses Crime of Violence _____ Director's Discretion _____ | YES | NO or N/A |
| B. Definition of Term, Crimes of Violence _____ | YES | NO or N/A * |

| 9. Has the inmate been found guilty of a 100 level incident report since his/her completion of the unit-based component of the drug abuse treatment program? | YES | NO |

Note to Unit Team Staff: Questions 8 (A) and 8 (B) are mutually exclusive.  For example, if the answer to question 8 (A) is no, then the answer to question 8 (B) must be not applicable, and vice versa.  Therefore, an inmate's instant offense can be evaluated by either the Crimes of Violence Program Statement, or the Categorization of Offenses Program Statement, not both (see Chapter 6.6).

|  | Indicates Ineligible | Indicates Eligible |
|---|---|---|
| 10. Has the inmate been found guilty of an incident report involving alcohol/drugs, violence/threats since completion of unit-based portion of drug program? | YES | NO |
| 11. If the inmate has a detainer, does he/she meet the early release requirement as stated in Section 6.1 of PS 5330.10. | NO | YES or N/A |

12. Has the inmate been found eligible for community programs -- Community Corrections Center/Home Confinement Placement? (if item 11 is yes, circle not applicable for this question)              NO              YES or N/A

        If not eligible for community placement, state reason: (only if item 12 is              no):

_____
_____
_____
_____

        If eligible for community placement, indicate length of time approved (days      or months):

_____
_____

**13.  HAVE ALL THE CRITERIA FOR PROVISIONAL
       EARLY RELEASE UNDER § 3621(E) BEEN MET?              NO                      YES**


_____  _____
DAP Coordinator's Signature                   Date


_____  _____
Unit Manager's Signature                   Date


_____  _____
Case Management Coordinator's Signature    Date


_____  _____
Warden's/Superintendent's Signature        Date


NOTE: Ordinarily, the Unit Manager or designee shall begin the routing process by submitting Attachment K to the institution drug abuse treatment coordinator.  The drug abuse treatment program coordinator shall conduct an immediate review of questions 1, 2 and 3, circle the appropriate answers, sign and date the form, and return the form to the Unit Manager or designee for completion of the review.  The Unit Manager or designee is responsible for completing all other questions (including question 13) before routing Attachment K to the CMC and Warden.


Original: ISM (signed copy with Warden's signature).
Copy: File in section 5, inmate Central file, release processing section.

PS 5330.10
CN-03 October 09, 1997
Attachment M, Page 1

## LISTING OF DRG ASSIGNMENTS

| Assignment | Group Code | Description |
|---|---|---|

**ASSIGNMENTS FOR INITIAL SCREENING**

| Assignment | Group Code | Description |
|---|---|---|
| DRG I RQ V | IR | DRG INTRV REQD: VIOLATION |
| DRG I RQ J | IR | DRG INTRV REQD: JUD RECOMMEND |
| DRG I RQ C | IR | DRG INTRV REQD: CONTRB TO OFF |
| DRG I NONE | IN | NO DRUG INTERVIEW REQUIRED |

**ASSIGNMENTS FOR REQUIRED DRUG ABUSE EDUCATION**

| Assignment | Group Code | Description |
|---|---|---|
| ED EXEM | EE | DRUG EDUCATION EXEMPT |
| ED WAIT R | EW | DRUG EDUCATION WAIT-REQUIRED |
| ED DECL R | ED | DRUG EDUCATION DECLINE-REQ |
| ED PART R | EP | DRUG EDUCATION PARTICIPATION-REQ |
| DRG E COMP | EC | DRUG EDUCATION COMPLETED |
| ED INCOM R | EI | DRUG EDUCATION INCOMPLETE-REQ |
| ED FAIL R | EF | DRUG EDUCATION FAIL-REQUIRED |

**ASSIGNMENTS FOR VOLUNTARY DRUG ABUSE EDUCATION**

| Assignment | Group Code | Description |
|---|---|---|
| ED WAIT V | EW | DRUG EDUCATION WAIT-VOLUNTEER |
| ED DECL V | ED | DRUG EDUCATION DECLINE-VOL |
| ED PART V | EP | DRUG EDUCATION PARTICIPATION-VOL |
| DRG E COMP | EC | DRUG EDUCATION COMPLETED |
| ED INCOM V | EI | DRUG EDUCATION INCOMPLETE-VOL |
| ED FAIL V | EF | DRUG EDUCATION FAIL-VOLUNTEER |

**ASSIGNMENTS FOR NONRESIDENTIAL DRUG ABUSE COUNSELING**

| Assignment | Group Code | Description |
|---|---|---|
| NR PART | NP | NRES DRUG COUNSEL PARTICIPANT |
| NR COMP | NC | NRES DRUG TMT/COMPLETE |
| NR DIS | NI | NRES DRUG TMT/DISCONTINUED |
| NR FAIL | NF | NRES DRUG TMT/FAIL |

**ASSIGNMENTS FOR REVIEW OF EARLY RELEASE ELIGIBILITY**

| Assignment | Group Code | Description |
|---|---|---|
| ELIGIBLE | R | 18 U.S.C. 3621 RELEASE ELIGIBLE |
| * INELIGIBLE | R | 18 U.S.C. 3621 RELEASE INELIGIBLE * |

**ASSIGNMENTS FOR RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM**

| Assignment | Group Code | Description |
|---|---|---|
| DAP UNQUAL | DU | RESIDENT DRUG TRMT UNQUALIFIED |
| DAP WAIT | DW | RESIDENT DRUG TRMT WAITING |
| DAP DECL | DD | RESIDENT DRUG TRMT DECLINED |
| DAP PART | DP | RESIDENT DRUG TRMT PARTICIPANT |
| IRT | NT | INTENSIVE REFRESHER TREATMENT |
| DAP COMP | DC | RES DRUG TRMT COMP/TRANS REQD |
| DAP INCOMP | DI | RESIDENT DRUG TRMT INCOMPLETE |
| DAP FAIL W | DF | RESIDENT DRUG TRMT FAIL-WITHDR |
| DAP FAIL E | DF | RESIDENT DRUG TRMT FAIL-EXPEL |
| DAP FAIL O | DF | RESIDENT DRUG TRMT FAIL-OUTCOM |

PS 5330.10
CN-03 October 09, 1997
Attachment M, Page 2

### LISTING OF DRG ASSIGNMENTS (CONTINUED)

**ASSIGNMENTS FOR NONRESIDENTIAL TRANSITIONAL SERVICES**

```
NR TS PART      NP        NRES DRUG TMT/TS PARTICIPANT
NR TS COMP      NC        NRES DRUG TMT/TS COMPLETE
NR TS INCM      NI        NRES DRUG TMT/TS INCOMPLETE
NR TS FAIL      NF        NRES DRUG TMT/TS FAILURE
```

**ASSIGNMENTS FOR INTENSIVE CONFINEMENT CENTER TREATMENT**

```
ICC DRUG        C         ICC DRUG TREATMENT REQUIRED
```

**ASSIGNMENTS FOR TRANSITIONAL SERVICES IN THE COMMUNITY**

```
TRAN PAR R      TP        COMMUNITY TRAN SERV PARTIC-REQ
TRAN PAR V      TP        COMMUNITY TRAN SERV PARTIC-VOL
TRANS COMP      TC        DRUG TRANS SERVICES COMPLETED
TRANS REMV      TF        DRUG TRANS SERVIC OTHR REMOVAL
TRANS FAIL      TF        DRUG TRANS SERVICES FAILURE
TRANS DECL      TD        DRUG TRANS SERVICES DECLINE
```
_____

**The following is a complete listing of all the DRG Assignments added by Change Notice 2.**

```
DRG I RQ V      IR        DRG INTRV REQD: VIOLATION
DRG I RQ J      IR        DRG INTRV REQD: JUD RECOMMEND
DRG I RQ C      IR        DRG INTRV REQD: CONTRB TO OFF
DAP UNQUAL      DU        RESIDENT DRUG TRMT UNQUALIFIED
NR TS PART      NP        NRES DRUG TMT/TS PARTICIPANT
NR PART         NP        NRES DRUG COUNSEL PARTICIPANT
ED INCOM V      EI        DRUG EDUCATION INCOMPLETE-VOL
NR FAIL         NF        NRES DRUG TMT/FAIL
DAP FAIL O      DF        RESIDENT DRUG TRMT FAIL-OUTCOM
NR TS INCM      NI        NRES DRUG TMT/TS INCOMPLETE
```

**The following is a complete listing of all DRG Assignments removed by Change Notice 2.**

```
DRG I REQD      IR        DRG INTRV REQD
NR INDIV        N I       NRES DRUG TMT/INDIV COUNSEL
NR GROUP        NG        NRES DRUG TMT/GROUP COUNSEL
NR TS IND       N IT      NRES DRUG TMT/INST TS INDIV
NR TS GRP       NG T      NRES DRUG TMT/INST TS GROUP
NR IND GRP      NGI       NRES DRUG TMT/IND & GROUP COUN
NR TIG          NGIT      NRES DRUG TMT/INST TS IND & GRP
```

PS 5330.10
CN-03 October 09, 1997
Attachment N, Page 1

(NOTIFICATION OF INSTANT OFFENSE DETERMINATION)

DATE: _____

REPLY TO: _____ (DAPC's Name)

TO: _____ (Unit Manager's Name)

SUBJECT: _____ (Inmate's Name)

_____ (Reg. No.)


**PART 1 - INSTANT OFFENSE DETERMINATION**

<u>Instructions</u>: Please mark an "X" in either response I or response II, and then go to Part 2 on the back.

_____     I. The inmate's instant offense is a crime that excludes him or her from early release under 18 U.S.C. § 3621(e). (If response I requires an "X", then also place an "X" in either item A or B).

     _____     A. Crime of Violence as contained in the Categorization of Offenses Program Statement.

     _____     B. Crime listed under the Director's Discretion as contained in the Categorization of Offenses Program Statement.

_____     II. The inmate's instant offense is **not** a crime that excludes him or her from early release under 18 U.S.C. § 3621(e).


**SEE PART 2 ON BACK**

PS 5330.10
CN-03 October 09, 1997
Attachment N, Page 2

**PART 2. OTHER CRITERIA**

Instructions: (Please mark an "X" in front of each true statement).

_____     1. Inmate is not an INS Detainee.

_____     2. Inmate is not a Pretrial Inmate.

_____     3. Inmate is not a Contractual Boarder.

_____     4. Inmate is not an "old law" inmate.

Explanation or other pertinent Information (e.g. inmate is both old law and new law)

_____
_____
_____

**After Parts 1 and 2 are completed, sign and date the form, and return it to the DAPC as soon as possible.**

Unit Manager (or designee) _____
Date of Review_____

original:  Drug Abuse Treatment File
copy:      Unit Team (place in section 4 of Inmate Central File)

PS 5330.10
CN-03 October 09, 1997
Attachment 0

**REQUEST TO DELAY PROVISIONAL § 3621(e) RELEASE DATE/NOTIFICATION TO INMATE**

DATE:      ___/___/___

FROM:

      _____
      (Name and Title)
      CCM/Drug Abuse Treatment Coordinator

SUBJECT:   REQUEST FOR DELAY OF PROVISIONAL § 3621(e) DATE

TO:      _____
              ISM

_____,  _____
            INMATE                          REGISTER #

Inmate _____ was required to participate in community transitional
services prior to § 3621(e) release.  This inmate has been returned from a
community-based program before completion because _____ (cite
reason).

The current provisional § 3621(e) release date for this inmate is
___/_____/____.

His/Her provisional 3621(e) release date must be delayed for _____ days
in order to _____.  Please adjust his/her release date in SENTRY.

original:  Unit Team (section 4 of the inmate's central file)
  copies:  Warden
           Inmate